GLASS, et al. *v.*
HANCOCK COUNTY ELECTION COMMISSION, et al.

No. 42858 October 21, 1963 156 So. 2d 825

*Upton Sisson,* Gulfport, for appellants.

*Gex & Gex,* Bay St. Louis; *William Joel Blass,* Wiggins, for appellees.

McElroy, J.

This is an appeal from the Chancery Court of Hancock County, Mississippi wherein the court sustained a general demurrer and dismissed the bill of complaint. The appellants filed their bill of complaint against appellees, Hancock County Election Commission, individu-

ally and as members of the Hancock County Election Commission.

The bill alleged that the present existing supervisors districts in Hancock County were designed, created and established more than 100 years ago, and had not since been changed in accordance with material changes of population as reflected by the U. S. Census of 1960; that as a result of failure of the Board of Supervisors to redistrict the beats within the county in accordance and as required by Section 170 of the Mississippi Constitution of 1890 and Section 2870 of the Mississippi Code of 1942, Anno., appellants suffered and continue to suffer irreparable damage in the denial of equal rights and equal protection of the laws guaranteed under the Fourteenth Amendment of the U. S. Constitution; that the failure to redistrict the county amounted to and constituted invidious discrimination against appellants and others similarly situated; that the U. S. Government, through its agency known and designated as "NASA" had appropriated for its use in the development and manufacture of rockets for moon and interplanetary exploration, practically all of District No. 2; therefore said district would almost be wholly without assessible property, either real or personal, and likewise, without a resident freeholder, as required by Section 170 of the Mississippi Constitution, for election to the Hancock County Board of Supervisors; that as a direct result of the failure to redistrict the county, a justiciable issue has arisen in which the court of equity has jurisdiction.

The complaint further alleges that the presently constituted Board of Supervisors of Hancock County will not redistrict said county in conformity with and as required by law, and that the appellees intend to, and will, unless restrained by the court, conduct the next election for the Board of Supervisors by the present existing illegal, invalid and unconstitutional supervisors

district, which said elections would deprive appellants and all others similarly situated, of their rights guaranteed by the Constitution of the State of Mississippi and of the United States.

The bill states that:

(1) They are and will be arbitrarily deprived of liberty and property without due process of law, they will be arbitrarily denied equal protection of the law in violation of the Fourteenth Amendment and Section 4, Article 4, of the Constitution of the United States; and

(2) They will be deprived of liberty and property under Article 3, Section 14 and Article 12, Section 241 of the Mississippi Constitution.

The complaint states that there was no plain and adequate remedy at law, and in their prayer for relief ask for:

(1) Temporary injunction enjoining the commissioners, the appellees, and their successors, from holding elections for beat officers within Hancock County under the present existing districts until such time as the board of supervisors shall redistrict the county in accordance with the applicable laws;

(2) That the appellees, the commission, be directed and required to hold the next general election for beat officers on a county at large basis, or in the alternative, the court enter an order redistricting said county in a manner conforming to the constitutional and statutory requirements; and

(3) That the Commission, the appellees, be further mandatorily enjoined from participating in any manner whatsoever with the election of supervisors in Hancock County, contrary to or other than from such newly created and redistricted supervisors districts.

Two of the commissioners filed an answer to the bill of complaint admitting that they were the commissioners. They admitted that they performed statutory duties and requirements in holding and certification of elections,

that the presently existing supervisors districts were designed, created, and established more than 100 years ago and had not since been changed, notwithstanding material increases in population in certain of supervisors districts as reflected by the U. S. Census of 1960. They admitted the provision of Section 170 of the Constitution and the provision of Section 2870 of the Mississippi Code.

The commission practically admits everything except that they neither admit or deny that there is no plain and adequate remedy at law, nor that the complainants are entitled to relief prayed for, but request directions of the chancery court.

Norton Haas' name was substituted as one of the commissioners in place of Johnson Shaw's, who resigned as one of the election commissioners. Norton Haas filed a demurrer to the bill of complaint stating there is no equity on the face of the bill.

Though they were not made parties to the suit, the Board of Supervisors filed a motion to appear as amicus curiae, that it be permitted to appear and to file such documents as may be appropriate or convenient and to be of assistance to the court, stating:

(1) That the Board of Supervisors are real parties in interest in the litigation, and even though suit is filed against the election commissioners they are not real parties to the suit.

(2) The Board of Supervisors at their meeting of February 25, 1963 unanimously gave evidence of their desire to redistrict the county at a date when the population shall have been permanently relocated, the people of the county now being suspended as to their location either within or without said county as a result of the NASA program.

(3) That when NASA program shall have been completed and the relocation of technicians, laborers, guardsmen, and all of the people associated with the program

shall have been relocated, then at that time it would be appropriate to redistrict Hancock County.

(4) A copy of a resolution was attached as Exhibit A, which motion of the Board shows "that the Board of Supervisors shall redistrict the County of Hancock, at such time as the residents of the NASA test site and buffer zone shall be relocated." The above motion was unanimously adopted by the Board February 1963.

(5) That great hardship has been and will be visited upon a large number of people in the county and that the population is in a complete state of suspended animation.

(6) To redistrict the county at this time is impracticable, unfair, and completely unjust to a large number of people. The request to plead was sustained.

The appellants' case seeks aids of a court of equity because there is clearly no adequate remedy at law. The relief sought is injunctive. The prayer of the bill seeks to enjoin the Hancock County Election Commission from holding further election to beat officers within the county until such time as the Board of Supervisors of said county shall redistrict their county as required by law, or, in the alternative that the court redistrict said county.

Section 170 of the Mississippi Constitution provides:

"Each county shall be divided into five districts, a resident freeholder of each district shall be selected, *in the manner prescribed by law,* and the five so chosen shall constitute the board of supervisors of the county, a majority of whom may transact business. The board of supervisors shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and perform such other duties as may be required by law; provided, however, that the legislature may have the power to designate certain highways as 'state highways,' and place such highways under the control and super-

vision of the state highway commission, for construction and maintenance. The Clerk of the chancery court shall be the clerk of the board of supervisors.''

Section 2870 of the Mississippi Code of 1942 Annotated, Rec., provides:

''Each county shall be divided into five (5) districts, *with due regard to equality of population* and convenience of situation for the election of members of the board of supervisors, but the districts as now existing shall continue until changed. The qualified electors of each district shall elect, at the next general election, and every four (4) years thereafter, in their district, one member of the board of supervisors; and the board, by unanimous vote of all members elected or when so ordered by a vote of the majority of the qualified electors of the districts affected voting in an election as hereinafter provided, may at any time, except as hereinafter provided, change or alter the district, the boundaries to be entered at large in the minutes of the proceedings of the board.

''The board, upon the petition of twenty-five per cent (25%) of the qualified electors of the county, asking that the districts of the county be changed, or altered, and setting out in such petition the changes, or alterations desired, shall call a special election for a date which shall be not less than thirty (30), nor more than sixty (60) days from the date of the presentation of the petition to the assembled board. A majority of the qualified electors of the county shall determine the issue of such election.

''Provided, however, that in any county in the state having a supervisors district containing more than fifty per cent (50%) of the population of the county according to the last federal census and/or more than fifty per cent (50%) of the assessed valuation of the county, the issue of the election heretofore provided for shall

be determined by a majority of those participating in said election.

"Provided further, however, that in any county in the state bordering on the Gulf of Mexico or Mississippi Sound and having a population in excess of eighty thousand (80,000) according to the last federal census, the issue of the election heretofore provided for shall be determined by a majority of the qualified electors of the county, and if such majority fail to vote affirmatively, no new petition shall be considered for four (4) years. Each such election shall be based upon a petition of twenty-five per cent (25%) of the qualified electors of the county, and to which petition shall be attached a map or plat defining the boundaries of each beat as proposed by said map or plat, and the election thereon shall be on such proposal.

"And the board, whenever a majority of the qualified electors of the county shall have voted to change or alter the existing districts to those set forth and described in the petition, shall at its first meeting thereafter establish said proposed districts by order on its minutes, to be effective on the first day of January following; and in default thereof, may be commanded to do so by writ of mandamus."

The anomalous situation in this case is that the appellants seek the aid of a court of equity because there is clearly no adequate remedy at law. The relief sought is injunction, and to enjoin a governmental party that is not made a party to the suit, i.e., the Board of Supervisors, though the prayer of the bill seeks to enjoin the Hancock Election Commissioners from holding further elections to beat officers until such time as the Board of Supervisors of the county shall redistrict their county as required by law, or, in the alternative, that the court redistrict the county. Section 170 of the Mississippi Constitution provides that each county shall be divided into five districts. Section 2870 of the Mississippi Code

prescribes the manner in which the county shall be districted: (1) that the Board by unanimous vote of all members elected or (2) when so ordered by a vote of the majority of the qualified electors of the districts affected voting in an election as hereinafter provided, may at any time, except as hereinafter provided. . . . the board, upon the petition of twenty-five per cent (25%) of the qualified electors of the county, asking that the districts of the county be changed, or altered, and setting out in such petition the changes, or alterations desired, shall call a special election for a date which shall be not less than thirty (30), nor more than sixty (60) days from the date of the presentation of the petition to the assembled board. A majority of the qualified electors of the county shall determine the issue of such election. . . . And the board, whenever a majority of the qualified electors of the county shall have voted to change or alter the existing districts to those set forth and described in the petition, shall at its first meeting thereafter establish said proposed districts by order on its minutes . . . and in default thereof, may be commanded to do so by writ of mandamus.

The Election Commissioners, in their answer, stated that the county should be redistricted. The County Board of Supervisors, after being allowed by the chancery court to be made a party to the suit, entered an order to redistrict the county: "That the Board of Supervisors shall redistrict the County of Hancock, at such time as the residents of the NASA test site and buffer zone shall be relocated." The above motion was unanimously adopted by the Board. In other words, the petitioners state that their constitutional rights are being violated and that they do not have an adequate remedy at law, yet recognize Section 2870 of the Mississippi Code, which states further the remedy to which they are entitled at a time when the Board of Supervisors agrees to do what they are paying for. Yet they

have at no time requested the Board to redistrict the county, nor have the twenty-five per cent (25%) of the qualified electors of the county petitioned the Board to redistrict the county as required by Section 2870.

 █ The purpose of the demurrer is to test the legal sufficiency of the bill. In other words, does the bill of complaint say enough to allow it to be proved in a court of equity? █ The court looks to the entire bill in determining its legal sufficiency. █ The bill asked for injunctive relief, which is an extraordinary remedy, the rule being and established that injunctions will not issue if there is a complete and adequate remedy at law. The appellants recognize Section 170 of the Constitution and Section 2870 of the Code. We believe that the learned chancellor was correct in finding that Code Section 2870 is a perfect remedy at law. Nowhere in the bill was it contended that this particular section of the Code failed to furnish an adequate remedy for the rights complained of in the bill, nor had they at any time exercised their rights under the Code. The matter of apportionment or reapportionment is essentially a legislative function. The Board of Supervisors is both a quasi-legislative board and a quasi-judicial board. The qualified electors of the county under Section 2870 have a right to request the Board to redistrict the county, or they may, by a petition of twenty-five per cent (25%) of the qualified electors of the county, require the Board of Supervisors to call a special election, and, if after having been approved by a majority of qualified electors voting, the Board of Supervisors fails to put the new redistricting plan into effect, when they can be required to do so by writ of mandamus.

 █ We are of the opinion that the learned chancellor was eminently correct in sustaining the demurrer, simply for the reason that Section 2870 is a complete and adequate remedy at law for the rights complained

of and set forth in the bill of complaint. Injunction will not lie where there is a remedy by mandamus.

In the case of E. L. Barnes et al. v. Ross R. Barnett et al., 241 Miss. 206, 129 So. 2d 638, in passing on enjoining a special election on "right to work" constitutional amendment alleging that it was void because it was adopted by the House and Senate when neither of the houses was constituted and apportioned in accordance with the State and Federal Constitutions was insufficient, the Court held:

"The decree was also proper for a second reason, namely, that stated therein: The want of power or jurisdiction in the court to enjoin the holding of an election for submission of a proposed constitutional amendment. The leading case in this state is Power v. Ratliff, 1916, 112 Miss. 88, 72 So. 864. Complainant sought to enjoin the secretary of state from submitting certain initiative measures to the people, under the initiative and referendum amendment to the Constitution (later held to be invalid). It was held that an injunction would not lie to restrain the holding of such an election, since complainants were not affected in their civil and property rights any differently from the general public. The election was a preliminary step, a purely political matter, not affecting the substantial property or civil rights of complainants." Cf. Howard v. Sheldon, 117 So. 839 (enjoining primary election).

The appellants rely on Baker v. Carr, 369 U. S. 186, 7 L. Ed. 2d 663, which is the case holding on the question of the Legislature's redistricting the State of Tennessee, in which the appellants had alleged a cause of action. Distinguishing the case from earlier cases dealing with distribution of political powers that a patent violation of the Equal Protection Clause of the United States Constitution has been shown, and that an appropriate remedy may be formulated, the opinion stated: "Tennessee has no initiative and ref-

erendum. . . . the majority of the people of Tennessee have no 'practicable opportunities for exerting their political weight at the polls' to correct the existing 'invidious discrimination.' The majority of the voters have been caught up in a legislative straitjacket. Tennessee has an 'informed, civically militant electorate' and 'an aroused popular conscience', but it does not sear 'the conscience of the people's representatives.' This is because the legislative policy has riveted the present seats in the Assembly to their respective constituencies, and by the votes of their incumbents a reapportionment of any kind is prevented."

The case of Tedesco v. Bd. of Sup'rs of Elections for Parish of Orleans et al., 43 So. 2d 514, is a somewhat analogous controversy. Tedesco brought action for the purpose of having Act No. 234 of 1948 declared unconstitutional. The attack was made on the ground that certain districts in the City of New Orleans had more residents than others, while each district had only one representative, and appellant, Tedesco, invoked the Fourteenth and Nineteenth Amendments. The trial court denied relief, and on appeal, it was confirmed by the Court of Appeals of Louisiana. In Baker v. Carr, the United States Supreme Court held that the decision by the U. S. Supreme Court in Tedesco v. Bd. of Sup'rs of Elections for Parish of Orleans et al. "indicates solely that no substantial federal question was raised by a state court's refusal to offset the districting of city council seats, especially as it was urged that there was a rational justification for the changed districting." In *Tedesco* the court held:

"In the first place, we do not see that by this contention there is raised any question cognizable under the Federal Constitution for the reason, as we have said, that it is well settled that the right to vote in each State is given by the State and may be curtailed by the state or controlled by the state so long as there

is no violation of the Fifteenth Amendment or of the Nineteenth Amendment of the Federal Constitution.

"Counsel for plaintiff declare that the Supreme Court of the United States has indicated in two instances that a state may not pass such statute as that which is now before us. They say that that was so indicated in Breedlove v. Suttles, 302 U.S. 277, 58 S. Ct. 205, 82 L. Ed. 252, and Colegrove v. Green, 328 U.S. 549, 66 S. Ct. 1198, 90 L. Ed. 1432. Counsel for defendants, on the other hand, are of the opinion that those cases are authority for the view that that is no violation of any provision of the Federal Constitution, nor of the amendments thereof, unless there results a violation of the provisions of the Fifteenth Amendment, or of the Nineteenth Amendment.

"We have read these cases and find them most confusing, but conclude that there is nothing in either of them to support the contention of plaintiff and that rather they support the view that unless a federal election is involved or unless there is involved a violation of the Fifteenth Amendment or of the Nineteenth Amendment, or unless such a statute brings about an unwarranted and unfair discrimination, there is nothing violative of the Federal Constitution. And we are not at all certain that even if there is an unwarranted discrimination there is a violation of the Federal Constitution, unless it be that the discrimination is based on sex, or race, or color, or previous condition of servitude."

In this case, in 339 U.S. Rep. 940, by unanimous vote it was held: "The motion to dismiss is granted and the appeal is dismissed for want of substantial federal question."

It is to be noted that the election commissioners and the Board of Supervisors of the county admit that the county should be, and will be, redistricted at a more propitious time due to the fact that NASA is taking

over the entire Beat 2 for governmental experimental purposes, indicating that there will be a general exodus of the people in that locality. The bill of complaint does not particularize to what extent this change will be. It is possible that there will be more people in that locality than there were before the government took over. In other words, it is hard to see just what way at this time an adequate and just redistricting could be made.

In his concurring opinion in Baker v. Carr, supra, Justice Douglas had this in mind when he said: "The justiciability of the present claims being established, any relief afforded can be fashioned in the light of well-known principles of equity." This statement was expanded in footnote 5, which says in part:

"The District Court need not undertake a complete reapportionment. It might possibly achieve the goal of substantial equality merely by directing respondent to eliminate the egregious injustices. Or its conclusion that reapportionment should be made may in itself stimulate legislative action. That was the result in Asbury Park Press v. Woolley, 33 N.J. 1, 161 A. 2d 705, where the state court ruled it had jurisdiction:

" 'If by reason of passage of time and changing conditions the reapportionment statute no longer serves its original purpose of securing to the voter the full constitutional value of his franchise, and the legislative branch fails to take appropriate restorative action, the doors of the courts must be open to him. The lawmaking body cannot by inaction alter the constitutional system under which it has its own existence.' 33 N.J., at 14, 167 A. 2d, at 711. The court withheld its decision on the merits in order that the legislature might have an opportunity to consider adoption of a reapportionment act. For the sequel see Application of Lamb, 67 N.J. Super 39, 46, 47, 169 A. 2d 822, 825-826.

"Reapportionment was also the result in Magraw v. Donovan, 159 F. Supp. 901, where a federal three-judge District Court took jurisdiction, saying, 163 F. Supp. 184, 187:

" 'Here it is the unmistakable duty of the State Legislature to reapportion itself periodically in accordance with recent population changes. . . . Early in January 1959 the 61st Session of the Minnesota Legislature will convene, all of the members of which will be newly elected on November 4th of this year. The facts which have been present to us will be available to them. It is not to be presumed that the Legislature will refuse to take such action as is necessary to comply with its duty under the State Constitution. We defer decision on all the issues presented (including that of the power of the Court to grant relief), in order to afford the Legislature full opportunity to ''heed the constitutional mandate to redistrict.'' '

"See 177 F. Supp. 803, where the case was dismissed as moot, the State Legislature having acted."

We are of the opinion that the Chancellor was right in sustaining the demurrer for the reason that the appellants have an adequate remedy at law under Section 170 of the Mississippi Constitution and Section 2870 of the Mississippi Code of 1942, Rec.

The case is therefore affirmed.

Affirmed.

*Lee, P. J., and Rodgers, Jones and Brady, JJ.*, concur.