Donald E. JOHNSON et al., Plaintiffs,

v.

GENESEE COUNTY, MICHIGAN, a Michigan Governmental Corporation, and The Genesee County Drain Commissioner, Defendants.

Civ. A. No. 52.

United States District Court
E. D. Michigan, N. D.,
at Flint.

June 18, 1964.

William J. Kane, Flint, Mich., for plaintiffs.

McTaggart & Lattie, by William Mc-Taggart, and John G. David, Flint, Mich., for defendants.

ROTH, District Judge.

To avoid needless repetition, the statement of facts in the opinion of the three-judge court, Johnson et al. v. Genesee County, D.C., 232 F.Supp. 563, is hereby adopted and incorporated in this opinion.

The thrust of the plaintiff's complaint is that the sewer improvement here in question was authorized by an affirmative vote of members of the Board of Supervisors representing less than a majority of the population of the county, and that, as a consequence, the majority of the population may be exposed to a contingent financial liability because of the pledging of the full faith and credit of the county in support thereof.

In view of the stipulated facts, this is a non sequitur. The resolution establishing the sewer district may be subject to such an interpretation, but what impelled 20 of 22 of the members of the Board who come from the City of Flint to vote against the resolution can only be answered by speculation or conjecture. However, the pledging of the full faith and credit of the county cannot be demonstrated to have been accomplished through a vote of members of the board representing less than a majority of the population, for the vote on this resolution was 37 to 11 in favor of its adoption.

The plaintiffs point out that the City of Flint has 52.61 per cent of the total population of the County of Genesee, and only 41.51 per cent (22 out of 53) representation on the Board of Supervisors; that each member of such board from the city represents 8,952 people, whereas the City of Grand Blanc has a member on the board for each 783 people. There are other imbalances as well. The Township of Burton has approximately 30,000 people, whereas the Township of Argentine has something over 2000. Each has one member on the board. These are serious imbalances. However, this is not an action brought to require the correction of the claimed malapportionment, but *to invalidate the*

*acts of an allegedly malapportioned board.* That this cannot be accomplished is clearly established by a long line of cases in Michigan, beginning with Board of Auditors of Wayne County v. Benoit, 20 Mich. 176; Giddings v. Secretary of State, 93 Mich. 1, 52 N.W. 944, 16 L.R.A. 402; Williams v. Secretary of State, 145 Mich. 447, 108 N.W. 749; and ending with Scholle v. Secretary of State, 367 Mich. 176, 116 N.W.2d 350.

We do not stop here, however. We consider also the other claims made by the plaintiffs, inasmuch as the case has been submitted on the merits, and the importance of the issues presented deserves definitive determination.

We have found cases which have considered the apportionment problem in connection with local units of government. Their assistance in a determination of the issues here is questionable.

According to 32 LW 3331, there has been docketed in the Supreme Court of the United States an appeal from the Mississippi Supreme Court, Glass v. Hancock County Election Commission (the ruling of the state court appearing in 156 So.2d 825), and among the questions presented is the following:

"(1) Does failure to redistrict county supervisor districts, like failure to reapportion state legislature, violate Fourteenth Amendment's Equal Protection Clause when such failure results in invidious discrimination; * * *."

(The Supreme Court dismissed the appeal for want of jurisdiction and denied certiorari, 84 S.Ct 1910.)

It is to be noted that Section 170 of the Mississippi Constitution provides:

"Each county shall be divided into five districts, a resident freeholder of each district shall be selected, in the manner prescribed by law, and the five so chosen shall constitute the board of supervisors of the county, a majority of who may transact business. * * * "

And Section 2870 of the Mississippi Code of 1942 Annotated, Rec., provides:
"Each county shall be divided into five (5) districts, with due regard to equality of population. * * * "

A case dealing with the same problem as applied to city commissioners is Tedesco v. Board of Supervisors of Elections, La.App., 43 So.2d 514, page 517:
"To illustrate the point, counsel for plaintiff points out that in the Fifth District, although there are about 8,508 registered voters, those voters have the privilege of electing one Commissioner whereas the voters of the Third District, who are at the present time numbered at about 48,020, are permitted to elect only one Commissioner. It is contended that as a result the voters of the Third District are improperly discriminated against.

"In the first place, we do not see that by this contention there is raised any question cognizable under the Federal Constitution for the reason, as we have said, that it is well settled that the right to vote in each State is given by the State and may be curtailed by the state or controlled by the state so long as there is no violation of the Fifteenth Amendment or of the Nineteenth Amendment of the Federal Constitution."

Tedesco was dismissed by the Supreme Court; see Tedesco v. Board of Supervisors of Elections, 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357:
"Per curiam: The motion to dismiss is granted and the appeal is dismissed for want of a substantial federal question."

Griffin v. Board of Supervisors of Monterey County, Cal., 33 Cal.Rptr. 101, 384 P.2d 421. The court there held that under the statutes of the State of California providing for the apportionment of county supervisorial districts, population is the primary goal of redistricting and other enumerated factors of topography, geography, cohesiveness, con-

tiguity, integrity, and compactness of territory and community of interests may be given only subsidiary effect and cannot warrant large deviations from equality of population.

The cases of Glass v. Hancock County Election Commission, supra, and Griffin v. Board of Supervisors of Monterey County, supra, are inapposite inasmuch as there was in each a state constitutional or statutory requirement for apportionment according to population. Here the constitutional provisions in neither the 1908 or 1963 Michigan constitutions make such provision. 1908 Michigan Constitution, Article VIII, Section 7:

"A board of supervisors, consisting of one from each organized township, shall be established in each county, with such powers as shall be prescribed by law. Cities shall have such representation in the boards of supervisors of the counties in which they are situated as may be provided by law."

1963 Michigan Constitution, Article VII, Section 7:

"A board of supervisors shall be established in each organized county consisting of one member from each organized township and such representation from cities as provided by law."

Michigan Statutes Annotated, Section 5.2106, Comp.Laws Supp.1956, § 117.27, provides a formula for the representation of cities on boards of supervisors, and there is no claim that its provisions have not been complied with in the composition of the Genesee County Board of Supervisors.

■ Neither the Fourteenth Amendment, nor Article 4 of the Constitution of the United States, has so far been interpreted by the Supreme Court of the United States to require the apportionment of local legislative bodies in a state in accordance with population. Article 4, Section 4, provides:

"The United States shall guarantee to every State in this Union a Re-

publican Form of Government; * * *."

This is a guarantee to the states, as such. See Texas v. White, 7 Wall. 700, 19 L.Ed. 227. This guarantee does not extend to systems of local government for municipalities, counties, or parishes. State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72.

"How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself." Highland Farms Dairy v. Agnew, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835.

See also Eckerson v. City of Des Moines, 137 Iowa 452, 115 N.W. 177:

"It is undoubtedly a question of local policy with each state what shall be the extent and character of the powers which its various political and municipal organizations shall possess, and the settled decision of its highest courts on this subject will be regarded as authoritative by the courts of the United States, for it is a question that relates to the internal constitution of the body politic of the state."

■ When a state exercises power wholly within the domain of state interest, it is insulated from federal judicial review. Such insulation cannot, of course, be used as an instrument for circumventing a federally protected right. Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110, at 117. But in this case, as in Pacific States Tel. Co. v. Oregon, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (where a corporation tax statute was attacked ostensibly on three grounds: (1) due process; (2) equal protection; and (3) the Guaranty Clause), the assertion of the grounds, (1) lack of due process; (2) denial of the equal protection of the laws; and (3) violation of the Civil Rights Acts, appear to the court to be invoked merely in verbal aid of the resolution of the issues involved.

■ The power of the state and its agencies over municipal corporations within its territories is not restrained by the provisions of the Fourteenth Amendment. Risty v. Chicago, R. I. & P. R. Co., 270 U. S. 378, 46 S.Ct. 236, 70 L.Ed. 641.

We turn now to the subject matter of the resolutions of the board.

■ One of the most important duties of government is the protection of the public health. Any legislation or action which tends to fulfill that duty falls within the police powers of states and is not violative of the Fourteenth Amendment so long as there is a real and substantial relationship between the action and the purpose of protecting the public health. United Enterprises v. Dubey, C.C.A.Fla., 128 F.2d 843, affirming, D.C., 42 F.Supp. 60, certiorari denied 317 U.S. 669, 63 S.Ct. 74, 87 L.Ed. 537. The adoption of the resolution which created the sewerage district involved in this case could hardly be called an arbitrary exercise of police power. In fact, provision for a system of sewers is the commonest exercise of that power, and interference with such power by a court on the basis of "due process" or "equal protection" could be justified only if the exercise of the power were palpably arbitrary. Hutchinson v. Valdosta, 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520. There is no proof of such arbitrary action here.

■ The remoteness of the possibility that plaintiffs will be damaged cannot be overlooked. The contingencies which must occur before the county—and hence those plaintiffs who are taxpayers—could be called upon to respond to the bondholders are remote. The pledge of the full faith and credit of the county does not create a debt. The debt remains that of the drainage district itself. In Bourne v. Board of Supervisors of Henrico County, 161 Va. 678, 172 S.E. 245, the plaintiffs claimed that the issuance of sanitary district bonds required submission to the voters of the entire county. The court held that the question need

only be submitted to the qualified voters of the district notwithstanding the full faith and credit was pledged as in this case. While this case was decided on the basis of the Virginia statute, it illustrates the principle that in matters of public health, the legislatures of the several states may prescribe the means by which costs may be defrayed. The Michigan Legislature delegated the authority to create such districts to the boards of supervisors of the various counties, and all that is required is that the charges be apportioned reasonably and justly, according to the benefit received. Hagar v. Reclamation District No. 108, 111 U.S. 701, 4 S.Ct. 663, 28 L.Ed. 569. The benefits to be received by plaintiffs because of the elimination of an unhealthy condition in an area adjacent to the City of Flint outweighs the remote possibility of damage which they claim they fear.

The Supreme Court has declared that the Fourteenth Amendment of the Constitution was not designed to interfere with the police power of the states to prescribe regulations of health, peace, morals, etc. Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923. In Houck v. Little River Drainage Dist., 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266, the plaintiffs claimed a denial of due process of law under the Fourteenth Amendment because of a levy of 25 cents per acre to defray preliminary expenses of a drainage district. In denying plaintiffs claim for relief, the court stated:

"And with respect to districts thus formed, whether by the legislature directly or in an appropriate proceeding under its authority, the legislature may itself fix the basis of taxation or assessment; that is, it may define the apportionment of the burden, and its action cannot be assailed under the Fourteenth Amendment unless it is palpably arbitrary and a plain abuse. These principles have been established by repeated decisions."

■ Under our system of government, the power of taxation is vested

exclusively in the legislative branch of government; and this power is a power which may be delegated by the legislature to municipal corporations, which are mere instrumentalities of the state for the better administration of public affairs. Here, full legislative power over the subject matter has been conferred upon a municipal corporation, i. e. the Board of Supervisors. Where this has been done, a legislative determination by the local legislative body is of the same effect as though made by the general legislature. See Withnel v. Ruecking Construction Co., 249 U.S. 63, 39 S.Ct. 200, 63 L.Ed. 479; and Hancock v. City of Muskogee, 259 U.S. 454, 39 S.Ct. 528, 63 L.Ed. 1081.

Unlike Glass v. Hancock County Election Commission, supra, where plaintiffs sought to enjoin county election commission from holding elections for members of county board of supervisors until the county was redistricted to conform to population and thus eliminate claimed invidious discrimination, plaintiffs here seek only to invalidate the actions of a Board of Supervisors, the members of which are not apportioned on the basis of population. The plaintiffs had the right to so narrow the issue. As said by Justice Holmes, in Ex parte Hobbs, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353, at page 355:

> "The judge was clearly right in treating the plaintiffs in the several cases as masters to decide what they would ask and in denying to the defendants, the petitioners, the power to force upon the plaintiffs a constitutional issue which at that moment they did not care to raise. The fact that the bills raised it did not prevent them from presenting a narrower claim and contenting themselves with the granting of that."

 Under the prevailing view of the United States Supreme Court, as we have pointed out above, the composition of local units of government is held to be a state matter. Under the rule of stare decisis, this Court is not free to consider the subject of the apportionment of representation on local legislative bodies. It may well be that the time will come when the application of the Fourteenth Amendment will be extended that far. The more likely development is that the June 15, 1964, rulings of the Supreme Court in cases dealing with the state legislatures of Alabama, New York, Maryland, Delaware, Virginia, and Colorado will result in legislatures in our states which will be proportionately representative of people, and therefore, likely to themselves establish in local legislative bodies a vastly different balance between people and governmental power.

The plaintiffs' prayers for injunctive relief are denied; the amended complaint dismissed; and no costs are awarded as a public question is involved.

An appropriate order may be submitted.