**Dr. A. K. MARTINOLICH et al., Plaintiffs,**

v.

**Harlan G. DEAN et al., Defendants.**

**Civ. A. No. 3111.**

United States District Court
S. D. Mississippi, S. D.

July 27, 1966.

Upton Sisson, Gulfport, Miss., for plaintiff.

Gex, Gex & Phillips, Bay St. Louis, Miss., George Morse, Gulfport, Miss., for defendant.

Before COLEMAN, Circuit Judge, and CLAYTON and COX, District Judges:

PER CURIAM:

This is a class action, instituted by resident taxpayers of the Fifth Supervisors District of Hancock County, Mississippi, for themselves and all others similarly situated to obtain a redistricting of the supervisors districts of that county. The basis for the relief sought is claimed invidious discrimination resulting from population imbalance which exists with respect to the districts as now constituted. The defendants are the five members of the present Board of Supervisors of the county.

There is no dispute with respect to any facts which are material to disposition of the basic issues on the merits of this controversy. According to the 1960 census, the population is distributed to the five supervisors districts in this county approximately as follows: First: 9.4%; Second: 6.1%; Third: 8.1%; Fourth: 13% and Fifth: 63%. There have been some significant population shifts and changes in Hancock County since 1960 because of the location in it of a large facility of the National Aeronautical and Space Administration which has acquired immense acreage necessary for its proper operation. The full effect of these changes and shifts is not now known to this court.

No petition by 25% of the qualified electors has ever been presented to the board of supervisors for redistricting the county as is authorized by Mississippi Code Annotated 1942 (Recompiled) § 2870.[1] But, suit was filed in state court

---

1. § 2870. *Districts and boundaries.*

Each county shall be divided into five (5) districts, with due regard to equality of population and convenience of situation for the election of members of the boards of supervisors, but the districts as now existing shall continue until changed. The qualified electors of each district shall elect, at the next general election, and every four (4) years thereafter, in their district, one member of the board of supervisors; and the board, by unanimous vote of all members elected or when so ordered by a vote of the majority of the qualified electors of the districts affected voting in an election as hereinafter provided, may at any time, except as hereinafter provided, change or alter the district, the boundaries to be entered at large in the minutes of the proceedings of the board.

The board, upon the petition of twenty-five per cent (25%) of the qualified electors of the county, asking that the districts of the county be changed, or altered, and setting out in such petition the changes, or alterations desired, shall call a special election for a date which shall

seeking judicial relief. The action of the trial court denying relief on the basis that the statute afforded an adequate remedy and that this remedy had not been followed was affirmed by the Supreme Court of Mississippi and the Supreme Court of the United States declined to accept jurisdiction. Glass v. Hancock County Election Com., 250 Miss. 40, 156 So.2d 825 (1963), app. dismd. and cert. den. 378 U.S. 558, 84 S.Ct. 1910, 12 L.Ed.2d 1035.

The board of supervisors has been unable to obtain the required unanimity to effect a board redistricting (see footnote 1, supra). There is no credible indication, absent relief here, that there will be a redistricting plan proposed and approved either by petition and election or by unanimous action of the present board.

■ It is a sad commentary on local political leadership that this situation, which we find to be invidious discrimination within the meaning of Baker v. Carr[2] and its progeny, must now be dealt with by a federal court rather than

---

be not less than thirty (30), nor more than sixty (60) days from the date of the presentation of the petition to the assembled board. A majority of the qualified electors of the county shall determine the issue of such election.

Provided, however, that in any county in the state having a supervisors districting containing more than fifty per cent (50%) of the population of the county according to the last federal census and/or more than fifty per cent (50%) of the assessed valuation of the county, the issue of the election heretofore provided for shall be determined by a majority of those participating in said election.

Provided further, however, that in any county in the state bordering on the Gulf of Mexico or Mississippi Sound and having a population in excess of eighty thousand (80,000) according to the last federal census, the issue of the election heretofore provided for shall be determined by a majority of the qualified electors of the county, and if such majority fail to vote affirmatively, no new petition shall be considered for four (4) years. Each such election shall be based upon a petition of twenty-five per cent (25%) of the qualified electors of the county, and to which petition shall be attached a map or plat defining the boundaries of each beat as proposed by said map or plat, and the election thereon shall be on such proposal.

And the board, whenever a majority of the qualified electors of the county shall have voted to change or alter the existing districts to those set forth and described in the petition, shall at its first meeting thereafter establish said proposed districts by order on its minutes, to be effective on the first day of January following; and in default thereof, may be commanded to do so by writ of mandamus.

When the districts are changed, by the qualified electors in an election as aforesaid, the board, of its own motion, shall not change or alter said districts within four (4) years thereafter.

This act shall not be construed to affect any supervisor now holding office until the expiration and end of his present term of office.

2. 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Other cases in the Supreme Court have refined and extended the doctrine of Baker. The "one person, one vote" premise, first announced in Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), (Georgia county unit system), was followed and applied in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), (Alabama legislature). Concurrently, the principles established by Baker, Gray and Reynolds have been followed in WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964), (New York legislature); Maryland Committee, etc. v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964), (Maryland legislature); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964), (Virginia legislature); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964), (Delaware legislature); and Lucas v. Forty-Fourth General Assembly of the State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964), (Colorado legislature). In Lucas, a legislative redistricting plan had been approved by the people in a referendum. In its opinion rejecting this plan, the Supreme Court, inter alia, said:

A citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be. We hold that the fact that a challenged legislative apportionment plan was approved by the electorate is without federal constitutional significance, if the

by the people and officials of Hancock County, Mississippi.

■ Defendants rely on decisions of other three-judge courts which have held that the "one person, one vote" rule (footnote 2, supra) does not apply to certain county level boards or agencies. See Sailors v. Board of Education, 254 F. Supp. 17 (W.D.Mich.1966) and Moody v. Flowers, 256 F.Supp. 195 (M.D.Ala. June 14, 1966). But, those and other similar cases are distinguishable on their facts. Most, if not all, of them dealt with governmental agencies of special or limited power and jurisdiction while the board of supervisors of a county in this state is a constitutional agency of government (section 170, Mississippi Constitution of 1890) which has been invested with vast authority and responsibility by the legislature. See, e. g., Mississippi Code Annotated 1942 (Recompiled) §§ 2870–3019. Even a severely abbreviated outline of the duties, responsibilities and powers of a Mississippi board of supervisors will demonstrate, we think, why the great dilution of the voting power of the present Fifth District of Hancock County is impermissible. They have legislative, executive and quasi-judicial powers, duties and responsibilities. They have full jurisdiction over roads, bridges and ferries. They equalize ad valorem assessments for taxes for the whole county and fix the tax levies for the county, for supervisors districts and for county schools. They may acquire lands by purchase or by eminent domain for county purposes and may sell county property. They authorize and approve expenditures of public funds for a long catalogue of governmental purposes. They issue bonds for the county, for its districts and schools by their own action, as the result of an election or, in some instances, in response to petition. They, in effect, are purchasing agents for the county and many of its offices and agencies. They have zoning responsibilities, promotional authority, and subsidizing powers for certain activities and undertakings. They can issue subpoenas and punish for contempt. Its members are conservators of the peace and individually possess the judicial powers of a justice of the peace. In short, they are, to a large extent, the government of their county. And, significantly, a majority of such a board may bind the county. Thus in Hancock County, the supervisors for the first, second and third districts—representing less than 24% of the county population—can bind the county, over the opposition of the supervisors of the fourth and fifth districts, representing 76% of the population. No combination of supervisors' votes—absent the vote of the supervisor for the fifth district—could speak for a majority of the people in this county.

More in keeping with the situation in Hancock County, than the cases cited by defendants, is the case of Ellis v. Mayor and City Council of Baltimore, 352 F.2d 123 (4th Cir. 1965) wherein it was held that the principles announced by the Supreme Court (footnote 2, supra) applied to districts for the election of councilmen for a municipal government. An imbalance of 1 to 1.37 in total population between two districts was disapproved. See also Bianchi v. Griffing, 238 F. Supp. 997 (E.D.N.Y.1965) and Brouwer v. Bronkema, No. 1855 (Cir. Ct. Kent Co., Mich., Sept. 11, 1964).

■ Defendants also say that the proceedings in Glass v. Hancock County Election Com., supra, produced the law of this case and that since the defendants here were permitted to appear amicus curiae there and some of the plaintiffs here were complainants there, res judicata or judicial estoppel bars relief here. The complete answer to these claims is that an almost identical situation was present in Baker v. Carr, supra, and with respect to it, the Supreme Court said:

Nor does the Tennessee court's decision in that case bear upon this, for just as in Smith v. Holm, 220 Minn. 486, 19 N. W.2d 914, and Magraw v. Donovan, D.

scheme adopted fails to satisfy the basic requirements of the Equal Protection

Clause, as delineated in our opinion in Reynolds v. Sims.

C., 163 F.Supp. 184; D.C., 177 F.Supp. 803, a state court's inability to grant relief does not bar a federal court's assuming jurisdiction to inquire into alleged deprivation of federal constitutional rights.

In sum, this court has jurisdiction pursuant to 28 U.S.C. § 1343(3) to adjudicate the federal constitutional rights of the parties despite the disposition of *Glass* and plaintiffs are entitled to have this court require that the shocking disparity of population among the supervisors' districts of Hancock County be corrected.

However, this court is aware that recent state legislation[3] provides an additional alternative method for dealing with this problem which must be taken into account as we fashion the nature of the relief to be granted by this court's decree. Enactment of this legislation shortly before the trial of this cause precluded its consideration by the parties and we specifically note that the validity of this legislation under the federal Constitution has not yet been placed in question in this case, *nor have we given consideration thereto.* That bridge will be crossed by us, if at all, only when, and if, the constitutionality of that Act is properly placed in issue here.

■ A proper solution to the problems which must now be solved, we hold, would be to require defendants to prepare and submit on or before October 24, 1966, a proposed plan for this court's approval for the redistricting of Hancock County into five districts for the election of supervisors, with the present population of each such proposed district to meet criteria established by the cases of the Supreme Court herein cited and followed, and to permit them to express concurrently with such submission their wishes with respect to adoption or not of the provision for election of supervisors at large (see footnote 3, supra). On or before November 8, 1966, plaintiffs will be required to file with this court and serve on defendants their reply to the proposals of the defendants, expressing their objections, if any, or concurrence therewith. If the proposals of the defendants in any way incorporate or rest upon the provisions of the amended statute, or if that amendment should be deemed to have any bearing upon this cause in any way, the plaintiffs may concurrently with their reply put in issue the validity of the new version of the statute, if they so desire, and inform the court of their objections of law as well as of fact.

The question of the allowance or not of attorneys fees to plaintiffs will be reserved for later disposition, but the parties will be required to file with this court, within ninety days from this date, affidavits as to the proper amount for such fees, if allowed, and to furnish within the same time briefs as to the propriety of such allowance against defendants in their official positions and against them or any of them personally.

Decree accordingly.

---

3. H.B. 223, approved by the governor on 27 May, 1966, amended section 2870 so as to provide an alternative method for electing members of the board of supervisors. The amended statute permits the board to adopt an order providing that all electors of the county shall be eligible to vote for each member of the board. Each candidate must be a resident of the district which he proposes to represent. If within sixty days of adoption and publication of such an order twenty per centum of the electors of the county present a petition to the board objecting to the alternate method, the board must call an election on the issue. If a majority of those voting approve the alternate method, members of the board will be elected at large. The fourth, fifth and sixth paragraphs of the former statute, as quoted in footnote 1, supra, were eliminated.