I. William BIANCHI, Jr., Quentin B. Sammis and the Town of Huntington, Plaintiffs,

v.

Evans K. GRIFFING, William P. Bain, Lester M. Albertson, William J. Leonard, Stephen F. Meschutt, Ralph J. Osgood, Charles R. Dominy, Robert J. Flynn, Arthur M. Cromarty and Thomas J. Harwood, constituting the Board of Supervisors of Suffolk County, New York, Defendants.

No. 62–C–821.

United States District Court
E. D. New York.

June 29, 1967.

Certiorari Denied Oct. 16, 1967.

See 88 S.Ct. 220.

See also D. C., 256 F.Supp. 617.

Frederic Block, Port Jefferson Station, N. Y., for plaintiff Bianchi.

Richard C. Cahn, Huntington, N. Y., for plaintiffs Sammis and Town of Huntington.

George W. Percy, Jr., Suffolk County Atty., for defendant, Board of Supervisors of Suffolk County; Stanley S. Corwin, Greensport, N. Y., of counsel.

Smith, Tasker, Finkelstein & Lundberg, Riverhead, N. Y., for intervenors, Towns of Southhampton, East Hampton, Riverhead, Southhold and Shelter Island and their respective Supervisors; Howard M. Finkelstein, Riverhead, N. Y., of counsel.

BRUCHHAUSEN, District Judge.

The plaintiffs, I. William Bianchi and Quentin B. Sammis, residents of the Towns of Brookhaven and Huntington, Suffolk County, State of New York, brought this action in their own behalf and in behalf of all other taxpayers and voters of the said County. Subsequently the Town of Huntington was made a party plaintiff.

Each of the ten individual defendants is an elected supervisor of his respective town. They collectively constitute the Board of Supervisors of the said County.

The plaintiffs, in their complaint, alleged that because of the gross disparity in population of the townships, each member of the said Board of Supervisors casts one vote in functioning as a County and a State official, resulting in an arbitrary impairment of the votes of the plaintiffs and all those similarly situated; that the system arbitrarily exalts the voting strength of persons residing in the less populous and rural townships with no justification other than the present invidiously discriminatory geographic classification and that such classification is in violation of the Fourteenth Amendment of the Constitution of the United States.

The plaintiffs' demand for relief, as stated in the complaint, is as follows:

(1) To declare void and invalid under the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution so much of Section 203 of the Suffolk County Charter enacted by the Legislature of the State of New York in the

year 1958 as Chapter 278 of the Laws of that year, as provides that each Supervisor shall have one vote as a member of the Suffolk County Board of Supervisors.

(2) To enjoin the defendants from acting as the Board of Supervisors unless and until a change in their voting strength is made.

(3) To cause to be convened a three-judge court to hear and determine the case (28 U.S.C. § 2281 et seq.).

The defendants moved to dismiss the complaint upon the ground, amongst others, that no substantial federal question was raised. The motion was denied without prejudice to renewal before a three-judge court. See Bianchi v. Griffing, 217 F.Supp. 166 (E.D.N.Y.1963). Thereafter, a three-judge court was convened and a hearing was held, at which the motion to dismiss was renewed.

The first opinion of the three-judge court, dated February 1, 1965, is reported in 238 F.Supp. 997. The Supreme Court of the United States dismissed the appeal from the order entered thereon, 382 U.S. 15, 86 S.Ct. 52, 15 L.Ed.2d 11, for want of jurisdiction.

The second opinion of the three-judge court, dated June 15, 1966, is reported in 256 F.Supp. 617. The supplemental opinion order, dated August 4, 1966, is not reported. The defendants appealed therefrom to the United States Supreme Court. The said court, in an opinion, dated May 22, 1967, 387 U.S. 136, 87 S. Ct. 1544, 18 L.Ed.2d 681, held that the said Charter provision "is one of limited application, concerning only a particular county involved in the litigation" and that "a three-judge court was improperly convened" and vacated the judgment therein and remanded the cause to the court which heard the case (the court whereover Judge Bruchhausen presides) so that it might enter a fresh decree from which appellants may, if they wish, perfect a timely appeal to the United States Court of Appeals for this Circuit.

The plaintiffs now move this court to adopt all of the prior decisions, orders and judgments of the improperly convened three-judge court, or for other relief detailed in their notice of motion.

The defendants move to vacate all orders of the three-judge court, also for other relief. They also renew their motion to dismiss the complaint, made at the inception of this litigation.

The Charter under attack is a State statute, applying solely to Suffolk County.

The plaintiffs do not claim a violation of a federally protected right, whereby a person is denied his vote because of his race. Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110. See also Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656, United States Supreme Court, May 22, 1967.

The local government system in Suffolk County is not of recent origin. The County was formed in 1683 (See McKinney's Consolidated Laws). The election of Supervisors at annual Town meetings including representation of their Towns on the Board of Supervisors emanated more than 250 years ago. (See Chapter 133 of the Laws of 1703).

It is common knowledge that in the intervening period, the populations of the Western Towns of the County have surpassed those of Eastern Towns.

However, population disparity, without other factors does not render a local system unconstitutional.

The gravamen of the complaint in this action is that there is a gross disparity in the population of the Townships, without justification other than the present invidiously discriminatory geographic classification.

This action has encountered five years of intensive litigation, encompassing many hours of argument, accompanied by numerous briefs. During that period there has been a flood of opinions, relating to the subject.

In Colegrove v. Green 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946), the qualified voters in Congressional districts of Illinois claimed lack of equality of population in violation of the Constitution of the United States. The Supreme Court affirmed the order, dismissing the complaint for want of equity and held that Congress has power to remedy Congressional apportionment. In the majority opinion, at page 556, 66 S.Ct. at page 1201, Mr. Justice Frankfurter stated:

"To sustain this action would cut very deep into the very being of Congress. Courts ought not to enter this political thicket. The remedy for unfairness in districting is to secure State legislatures that will apportion properly, or to invoke the ample powers of Congress. The Constitution has many commands that are not enforceable by courts because they clearly fall outside the conditions and purposes that circumscribe judicial action."

Mr. Justice Rutledge in his concurring opinion stated at page 565, 66 S.Ct. at page 1208:

"In the * * * case of Wood v. Broom, 287 U.S. 1 [53 S.Ct. 1, 77 L.Ed. 131] (1932) the Court disposed of the cause on the ground that the 1929 Reapportionment Act, 46 Stat. 21, did not carry forward the requirements of the 1911 Act, 37 Stat. 13, and declined to decide whether there was equity in the bill. 287 U.S. 1, 8 [53 S.Ct. 1, 3, 77 L.Ed. 131]. But, as the Court's opinion notes, four justices thought the bill should be dismissed for want of equity.

"In my judgment this complaint should be dismissed for the same reason. Assuming that the controversy is justiciable, I think the cause is of so delicate a character, in view of the considerations above noted, that the jurisdiction should be exercised only in the most compelling circumstances."

In South v. Peters, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834 (1950) it appears that the District Court dismissed the complaint whereby plaintiffs sought an order, restraining adherence to a county unit system in a forthcoming primary election. The Court at page 277, 70 S. Ct. at page 642, said:

"The court below dismissed appellants' petition. 89 F.Supp. 672. We affirm. Federal courts consistently refuse to exercise their equity powers in cases posing political issues arising from a state's geographical distribution of electoral strength among its political subdivisions. See MacDougall v. Green, 335 U.S. 281 [69 S.Ct. 1, 93 L.Ed. 3] (1948); Colegrove v. Green, 328 U.S. 549 [66 S.Ct. 1198, 90 L.Ed. 1432] (1946); Wood v. Broom, 287 U.S. 1, 8 [53 S.Ct. 1, 3, 77 L.Ed. 131] (1932); cf. Johnson v. Stevenson, 170 F.2d 108 (C.A. 5th Cir. 1948)."

In W.M.C.A. Inc. v. Simon, 208 F. Supp. 368 (1962) the plaintiffs sought a judgment, declaring the State's constitutional and statutory provisions governing apportionment of Senate and Assembly Districts unconstitutional.

In the Supreme Court's remand of the case, reported in 370 U.S. 190, 82 S.Ct. 1234, 8 L.Ed.2d 430 (1962) the per curiam opinion stated:

" * * * we held in Baker v. Carr, 369 U.S. 186 [82 S.Ct. 691, 7 L.Ed.2d 663] (1962) that a justiciable federal constitutional cause of action is stated by a claim of arbitrary impairment of votes by means of invidiously discriminatory geographic classification."

In the majority opinion of Baker v. Carr, supra, Mr. Justice Brennan stated:

* * * it [is] open to courts * * * to determine * * * that a discrimination reflects no policy, but simply arbitrary and capricious action.

"Invidious discrimination" is an irrational and inconstant action against a group of citizens. We do not find that New York State apportionment policy is irrational; all that plaintiffs have illustrated is that the apportionment is not based solely on population. But as we said in MacDougall v. Green,

335 U.S. 281, 283, 69 S.Ct. 1, 2, 93 L.Ed. 3.

To assume that political power is a function exclusively of numbers is to disregard the practicalities of government.

■■ There are criteria other than population for determining apportionment. In Baker v. Carr, Mr. Justice Harlan said, in a dissenting opinion:

"[N]othing in the Federal Constitution [stops] a State * * * from choosing any electoral legislative structure it thinks best suited to the interests, temper, and customs of its people. * * *"

In W.M.C.A. Inc. v. Simon, 202 F. Supp. 741, Judge Ryan in a concurring opinion, at page 754 stated:

"There is no claim made here that the apportionment formula before us or the laws enacted to apply it effect a discrimination against any particular racial or religious group. The complaint is that the method of apportionment gives rise solely to territorial or purely geographical discrimination which grossly dilutes the vote of urban dwellers. Judicial interference by federal courts with the power of the state to create internal political or geographical boundaries affecting the right of suffrage can not be supported by mere territorial discrimination and nothing more."

In Reynolds v. Sims, 377 U.S. 533, at page 575, 84 S.Ct. 1362 at page 1388, 12 L.Ed. 506 (1964) the Court held in part:

"Political subdivisions of States—counties, cities or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions. As stated by the Court in Hunter v. City of Pittsburgh, 207 U.S. 161, 178 [28 S.Ct. 40, 46, 52 L.Ed. 151], these governmental units are 'created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them,' and the 'number, nature, and duration of the powers conferred upon [them] * * * and the territory over which they shall be exercised rests in the absolute discretion of the state.'"

As previously stated, Section 203 of the Suffolk County Charter accords each member of the Board of Supervisors one vote. Section 205 thereof provides that in the event of a tie the presiding officer shall cast the deciding vote.

To the same effect is Tedesco v. Board of Supervisors of Elections, La.App., 43 So.2d 514, 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357.

In Johnson v. Genesee County, Michigan, D. C., 232 F.Supp. 567 (1964), the court was confronted with a similar problem. The plaintiffs, claiming imbalance in the voting system, sought an injunction, restraining action of county commissioners. The Court reviewed the applicable law and held in part, at page 570:

"Neither the Fourteenth Amendment nor Article 4 of the Constitution of the United States, has so far been interpreted by the Supreme Court of the United States to require the apportionment of local legislative bodies in a state in accordance with population. Article 4, Section 4, provides:

" 'The United States shall guarantee to every State in this Union a Republican Form of Government, * * *.'

"This is a guarantee to the states, as such. See Texas v. White, 7 Wall. 700, 19 L.Ed. 227. This guarantee does not extend to systems of local government for municipalities, counties, or parishes. State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72.

" 'How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself.' Highland Farms Dairy v. Agnew, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835.

**502**

"See also Eckerson v. City of Des Moines, 137 Iowa 452, 115 N.W. 177:

" 'It is undoubtedly a question of local policy with each state what shall be the extent and character of the powers which its various political and municipal organizations shall possess, and the settled decision of its highest courts on this subject will be regarded as authoritative by the courts of the United States, for it is a question that relates to the internal constitution of the body politic of the state.' "

Further quoting from Johnson, at page 572:

"Under the prevailing view of the United States Supreme Court, as we have pointed out above, the composition of local units of government is held to be a state matter."

Upon due deliberation the Court concludes that the complaint fails to state a cause of action and should be dismissed.

The defendants' motion is granted and the plaintiffs' motion is denied.

Settle order on ten (10) days' notice.