# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00146-SCT

*CAROLYN MAULDIN,*
*STACY SPEARMAN,*
*DAVID MITCHELL,*
*JAMES CLAY HAYS, JR., AND*
*MISSISSIPPI REPUBLICAN*
*EXECUTIVE COMMITTEE*

*v.*

*BEATRICE BRANCH,*
*RIMS BARBER,*
*L.C. DORSEY,*
*DAVID RULE,*
*MELVIN HORTON,*
*JAMES WOODARD,*
*JOSEPH P. HUDSON*
*AND ROBERT NORVEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/2001 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL B. WALLACE |
| | CHRISTOPHER ROYCE SHAW |
| | ARTHUR F. JERNIGAN, JR. |
| | RICHARD F. SCRUGGS |
| | F. KEITH BALL |
| | GRANT M. FOX |
| | STACI BOZANT O'NEAL |
| ATTORNEYS FOR APPELLEES: | ROBERT B. McDUFF |
| | CARLTON W. REEVES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 12/18/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from a chancery court's adoption of a congressional redistricting plan when the Legislature failed to perform its statutorily-mandated duty to do so. We find that the chancery court lacked jurisdiction over this case and that the only state governmental entity authorized to draw new congressional districts is the Legislature. Therefore, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

¶2.     Pursuant to § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, Mississippi must obtain federal preclearance of new congressional redistricting plans from either the United States District Court for the District of Columbia or the United States Attorney General. In Mississippi, the State Legislature is responsible for submitting a new plan before the congressional candidate qualifying deadline. Miss. Code Ann. § 5-3-123 (Rev. 2002).[1]

¶3.     Following the 2000 decennial census, Mississippi's delegation to the United States House of Representatives was reduced from five to four representatives. However, the Legislature failed to act and left the old five-district plan in place.

¶4.     Concerned about the Legislature's failure to act, on October 5, 2001, Beatrice Branch, Rims Barber, L. C. Dorsey, David Rule, Melvin Horton, James Woodard, Joseph P. Hudson and Robert Norvel[2] ("Branch") filed for injunctive relief in the Chancery Court of the First Judicial District of Hinds

---

[1]"The members of the [Legislature's Standing Joint Congressional Redistricting Committee] shall draw a plan to redistrict, according to constitutional standards, the United States districts for the state of Mississippi no later than thirty (30) days preceding the convening of the next regular session of the legislature . . . ." Miss. Code Ann. § 5-3-123 (Rev. 2002).

[2]Plaintiffs, appellees here, are individual registered voters of various Mississippi counties.

County, Mississippi, against the State Board of Election Commissioners,[3] alleging that it did not appear to be likely that the Legislative Standing Joint Congressional Redistricting Committee (SJCRC) would submit a new redistricting plan and requesting the chancery court to adopt and implement a plan in time for § 5 preclearance and the candidate qualifying deadline of March 1, 2002. After the chancery court assumed jurisdiction, the SJCRC filed a motion to dismiss in which it alleged, inter alia, that the suit was not ripe as the Legislature retained "substantial time" to act either at a special session or at the regular session beginning on January 2, 2002, without any disruption or delay to the candidate qualifying or primary dates, or the general election in November of 2002. On November 19, 2001, the chancery court denied the motion to dismiss and urged the Legislature and the Governor to renew their efforts to enact and implement a congressional redistricting plan as soon as possible. The Mississippi Democratic Executive Committee and the Mississippi Republican Executive Committee were joined as indispensable parties. Carolyn Mauldin, Stacy Spearman, David Mitchell and James Clay Hays, Jr.[4] ("Mauldin"), were joined as party defendants after they filed a motion to intervene.

¶5.     Meanwhile, suit was filed in the United States District Court for the Southern District of Mississippi for an injunction to stay the state court action.[5] This complaint alleged that Mississippi's then-existing five-member district plan could not be enforced under federal law and that *any* plan subsequently adopted by state authorities, including the chancery court, could not be enforced until precleared under § 5. The three-

---

[3] The State Board of Election Commissioners consists of the Secretary of State, the Attorney General, and the Governor. Miss. Code Ann. § 23-15-211 (Rev. 2001).

[4] The Mauldin intervenors are all individual registered voters of various Mississippi counties.

[5] *John Robert Smith, Shirley Hall and Gene Walker v. Eric Clark, Secretary of State of Mississippi; Mike Moore, Attorney General for the State of Mississippi; Ronnie Musgrove, Governor of Mississippi; Miss. Republican Executive Comm.; and Miss. Democratic Executive Comm.*, Civil Action No. 3:01-cv-855WS (S.D. Miss.).

judge district court convened to hear the federal lawsuit deferred ruling on the request for an injunction on December 5, 2001, so that state authorities would have a continued opportunity to redistrict. The three-judge court ruled, "[I]f it is not clear . . . by January 7, 2002, that the State authorities can have a redistricting plan in place by March 1," it would assert jurisdiction, proceed to rule on the injunction motion, and, if necessary, draft and implement its own reapportionment plan. *Smith v. Clark,* 189 F. Supp. 2d 502, 503 (S.D. Miss. 2001) (three-judge court).

¶6.     In mid-December, the SJCRC filed for writs of prohibition and mandamus in this Court alleging that the chancery court lacked jurisdiction. Finding that the chancery court had jurisdiction, we denied the petitions and stated, "Any congressional redistricting plan adopted by the chancery court . . . will remain in effect, subject to any congressional redistricting plan which may be timely adopted by the Legislature." *In re Mauldin*, No. 2001-M-01891 (Miss. Dec. 31, 2001).

¶7.     Later in December, the chancery court conducted a trial in which 11 proposed redistricting plans were submitted into evidence. The chancery court adopted the submitted plan called "Branch Plan 2A," holding that the plan constituted the best compromise between the separate plans adopted by the Mississippi House of Representatives and Senate and that it best provided parity and competition between the supporters of the two incumbents whose districts were affected by the mandatory redistricting. Branch Plan 2A was submitted to the United States Attorney General for § 5 preclearance on December 26, 2001.

¶8.     In February of 2002, the three-judge court announced that it had drawn a redistricting plan and that it intended to implement this plan absent timely preclearance of the chancery court plan. *Smith v. Clark,* 189 F. Supp. 2d 512 (S.D. Miss. 2002) (three-judge court). The three-judge court ordered:

> that the [State of Mississippi] shall use the congressional redistricting plan
> adopted by this court . . ., in all succeeding congressional primary and
> general elections for the State of Mississippi thereafter, until the State of

4

> Mississippi produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965.

*Smith v. Clark*, 189 F. Supp. 2d 548, 559 (S.D. Miss. 2002) (three-judge court), *aff'd sub. nom.*

*Branch v. Smith*, 538 U.S. 254, 123 S. Ct. 1429, 155 L. Ed.2d 407 (2003).

¶9.     On February 14, the United States Attorney General notified the Mississippi Attorney General that "the Department is not formally seeking additional information regarding the redistricting plan," but that it needed more information about this Court's order in *In re Mauldin*. The Department of Justice asserted that when it received the requested information a new 60-day period for its § 5 review would begin. It expressed concern about reviewing the plan in the absence of a decision from this Court regarding the chancery court's jurisdiction.

¶10.    The three-judge court subsequently enjoined the chancery court plan on the ground that this Court's assertion of chancery jurisdiction in *In re Mauldin* constituted a change in  election law requiring § 5 preclearance –  which had not been granted. *Smith v. Clark*, 189 F. Supp. 2d 503, 508 (S.D. Miss. 2002) (three-judge court). Alternatively, the federal district court held that the assertion of state court jurisdiction violated Article I, § 4 of the United States Constitution, reasoning congressional redistricting is a legislative function and that, without an express delegation of power, state courts cannot adopt a remedial redistricting plan if the legislature defaults. *Smith v. Clark*, 189 F. Supp. 2d at 558. In late February, the district court ordered implementation of its own plan, and the 2002 congressional elections were held accordingly. *Id.* at 559.

¶11.    The United States Supreme Court affirmed the federal  injunction strictly due to the fact that the chancery court plan had not been precleared. *Branch v. Smith,* 538 U.S. 254, 123 S. Ct. 1429, 1437,

155 L. Ed. 2d 407 (2003). It did not address the issue of whether the chancery court's assumption of jurisdiction was constitutional. *Id.* Finally, the Supreme Court stated that its ruling was not "binding upon state and federal officials should Mississippi seek in the future to administer a redistricting plan adopted by the Chancery Court." *Id.*

¶12. Mauldin has appealed the issues of the chancery court's assumption of jurisdiction and its adoption of the Branch Plan 2A. Branch defends the chancery court's judgment, while the State Board of Election Commissioners did not file a brief in this appeal.

## DISCUSSION

### I. STATUTORY AUTHORITY TO DRAW CONGRESSIONAL DISTRICTS.

¶13. Our statutes clearly provide that the *only* governmental entity in this state that is authorized to draw congressional districts is the Legislature. *See* Miss. Code Ann. § 5-3-123 (Rev. 2002). That power is not granted to any other governmental entity by the Mississippi Constitution, statutes, or case law.

¶14. The power to *assist* the Legislature with "professional, technical and other expertise" in redistricting is given to "all political subdivisions, state agencies, and all other creatures of the state of Mississippi." Miss. Code Ann. § 5-3-127 (Rev. 2002). Because the state courts are not mentioned specifically in either § 5-3-123 or § 5-3-127, they must necessarily fall under the category of "all other creatures of the state of Mississippi." Therefore, state courts are *only* authorized to *assist* in redistricting, not to engage in the act of redistricting. The chancery court was clearly erroneous in assuming jurisdiction of this matter in which the parties requested the court to engage in redistricting.

¶15. Our case law clearly states that chancery courts lack jurisdiction to adjudicate disputes over congressional redistricting. *In re McMillin*, 642 So. 2d 1336, 1339 (Miss. 1994) ("Chancery Courts

6

in this state do not have jurisdiction to enjoin elections or to otherwise interfere with political and electoral matters which are not within the traditional reach of equity jurisdiction."); *Brumfield v. Brock*, 169 Miss. 784, 142 So. 745, 746 (1932) ("By a long line of decisions this court has held that courts of equity deal alone with civil and property rights and not with political rights.").

¶16. This ruling is supported by the United States District Court's finding as follows:

> This predicate conclusion raises the next question that we must resolve: whether any enactment of the Mississippi legislature grants to the chancery court the power to redistrict the State of Mississippi for congressional elections. We find no such statute. Furthermore, no case of the Mississippi Supreme Court has ever indicated there is such a statute. We thus come to the final conclusion that the redistricting plan for congressional elections in 2002 produced by the Hinds County Chancery Court transgresses Article I, Section 4 of the United States Constitution, is therefore unconstitutional, and is consequently a nullity. . . .
>
> * * *
>
> [C]ongressional redistricting must be done within the perimeters of the legislative processes, whether the redistricting is done by the legislature itself or pursuant to the valid delegation of legislative power. We have found no cases that support a contrary conclusion.
>
> * * *
>
> [W]e can find no legislative act upon which to base the chancery court's authority to act in congressional redistricting. While the Mississippi legislature has empowered other state bodies to redistrict a number of *state* electoral districts, it has not authorized any other state body, including the chancery court, to redistrict *congressional* districts.

*Smith v. Clark*, 189 F. Supp. 2d at 550, 554, 556 (footnote omitted) (emphasis in original).

¶17. The United States District Court criticized this Court's summary order in *In re Mauldin* that the chancery court *did* have jurisdiction over this matter, stating, "The court did not provide any basis for its holding, did not refer to its earlier cases to the contrary, and did not point to any legislative authority that

authorized the chancery court to act." ***Id.*** at 557 (footnote omitted). In light of our interpretation of statutory law and upon reconsideration of our previous ruling, we reverse that order and rule that *no* Mississippi court has jurisdiction to draw plans for congressional redistricting.

¶18.    We therefore find that the Hinds County Chancery Court erred in assuming jurisdiction over this matter.[6]

## II.    AT-LARGE ELECTIONS.

¶19.    The State has a statutorily-mandated and federally-approved default procedure[7] which comes into play when the Legislature fails to act.  Even though an at-large election is an unpopular option, it is the law of this State.

¶20.    The only way this Court may not apply a pertinent statute to a set of facts is to declare the statute unconstitutional. ***Moore v. Grillis***, 205 Miss. 865, 88, 39 So. 2d 505, 509 (1949) (Only the Legislature may decide whether a law is needed and advisable.  The Court's duty is to "construe the law and apply it to the case presented and determine whether the Constitution of this State authorizes the legislation.").  Or, put another way:

---

[6]The ruling that the chancery court did not have jurisdiction does not offend Art. 6, § 147 of the Mississippi Constitution which provides:

> No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction; . . .

We find that *no* state court has jurisdiction to draw plans for congressional redistricting; therefore jurisdiction does not properly lie in the circuit court.

[7]Miss. Code Ann. § 23-15-1039 (Rev. 2001) provides for at-large elections when the Legislature fails in its duty to provide new congressional districts.

> The duty of this Court is to interpret the statutes as written. It is not the duty of this Court to add language where we see fit. "[O]ur primary objective when construing statutes it to adopt that interpretation which will meet the true meaning of the Legislature." [Citations omitted.] "Our role is to determine the legislative intent and constitutionality of acts passed by the Legislature, and if we interpret a statute contrary to the intent or will of the Legislature, that body has the absolute authority to change the statute to suit its will."

*Stockstill v. State*, 854 So. 2d 1017, 1022-23 (Miss. 2003) (quoting *Anderson v. Lambert*, 494 So. 2d 370, 372 (Miss. 1986) & *Board of Sup'rs of Lamar County v. Hattiesburg Coca Cola Bottling Co.*, 448 So. 2d 917, 927 (Miss. 1984) (Hawkins, J., concurring in part & dissenting in part)).

¶21. "Legislative acts are … cloaked with a presumption of constitutionality, and unconstitutionality must appear beyond reasonable doubt." *Estate of Smiley*, 530 So. 2d 18, 21-22 (Miss. 1988) (citing *Miss. Power Co. v. Goudy*, 459 So. 2d 257, 263 (Miss. 1984)). A statute's validity is *presumed*:

> We adhere here to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusions affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of validity of a statute. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.

*Loden v. Miss. Pub. Serv. Comm'n*, 279 So. 2d 636, 640 (Miss. 1973) (citations omitted).

¶22. The Court must presume that the Legislature "intended to comply with the organic law, and the statute should be given a reasonable interpretation which is consistent with that presumed intent and which would permit the upholding of the act." *Berry v. Southern Pine Elec. Power Ass'n,* 222 Miss. 260, 76 So. 2d 212, 214 (1954) (quoting *Willmut Gas & Oil Co. v. Covington County*, 221 Miss. 613, 71 So. 2d 184, 189 (1954)).

¶23. This Court cannot ignore the will of the people of this State as encapsulated in § 23-15-1039. To do so would undermine all enforcement of state law.

## IV. FEDERAL INJUNCTION.

¶24. However, an at-large election cannot be held at present. Due to the Legislature's failure to act, the State is currently under a federal court injunction ordering that the State use the congressional districts drawn by the three-judge court.[8] This injunction will remain in place until that court vacates it or the Legislature draws a redistricting plan which is then federally precleared under § 5. Therefore, at-large elections cannot be held until the injunction is vacated.

## CONCLUSION

¶25. Mississippi too often defaults in meeting its responsibilities as a state. We wait for the federal government and the federal courts to intervene for us and then we complain about the loss of our state's rights. And history has shown the federal government will intervene when the state fails to act to protect its citizens. In this case, we, as a Court, are confronted with a situation where our Legislature defaulted on its constitutional and statutory obligations to the citizens of the state and failed to protect our state's right to govern itself in the election of our congressional representatives. This default is nothing less than a declaration by the Legislature that Mississippi does not think it is necessary to exercise its authority as one of the fifty states to determine its own congressional districts. It denies our peoples' representatives of any influence over the makeup of our congressional representatives.

---

[8]"[The State of Mississippi] shall use the congressional redistrict plan adopted by this court . . ., in all succeeding congressional primary and general elections for the State of Mississippi thereafter, until the State of Mississippi produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965." *Smith v. Clark*, 189 F. Supp. 2d at 559.

¶26. The slate is clean now, and the way is clear for our Legislature to reassert its authority to represent the people of this state in the adoption of the congressional districts to be used in the next election in 2004. Mississippi, and more specifically the Legislature, should seize this opportunity now to use its constitutional powers and rectify this problem by approving constitutionally acceptable election districts which reflect the voice of the state's elected legislators and then obtaining federal preclearance of those districts.

¶27. The chancery court's judgment is reversed, and this action is dismissed without prejudice for lack of jurisdiction.

¶28. **REVERSED AND RENDERED.**

**PITTMAN, C.J., SMITH, P.J., COBB AND CARLSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶29. The majority punts on the default caused by the Legislature's wilful refusal to redistrict. Not only does the majority turn a blind eye towards the Tenth Amendment to the United State Constitution's reservation of powers to the states, but it also trespasses upon rights guaranteed to Mississippi's citizens through our own state constitution. Why does the majority want to give up state's rights to the Federal Government? We should accept our responsibility when the Legislature defaults in its responsibility and this Court should step in and do the will of its citizens. The Legislature can still redistrict, but until it does,

11

our state's judiciary should maintain that responsibility and not leave it to the federal court to do our work. Accordingly, I dissent.

### I. AUTHORITY TO DRAW CONGRESSIONAL DISTRICTS.

¶30. I agree that the primary responsibility and authority for drawing congressional districts rests squarely with the Legislature. However, I disagree with the majority's inaccurate interpretation of Miss. Code Ann. § 5-3-127 (Rev. 2002).

¶31. The majority contends that § 5-3-127 is directly applicable to the case at bar because it strictly limits the role of the courts to one of assistance and, therefore, prevents the chancellor from assuming jurisdiction over the matter. First, a plain reading of the statute reveals that this is simply an assurance by the Legislature that if it asks a fellow government actor for *assistance* in redistricting, that said actor is authorized to do so. There is no prohibitive language in the statute which tells us what certain branches of government may not do. Not only is there absolutely no language therein which would seek to limit the jurisdiction of any court of this state, if there were, such would be in contravention of the Constitution of the State of Mississippi.

¶32. Sections 156 and 159 of Article 6 of the Mississippi Constitution of 1890 provide our state courts with this jurisdiction. Section 159 provides a list of subjects over which chancery courts retain jurisdiction. The jurisdiction of the circuit courts on the other hand, is spelled out in Section 156, which states that "[t]he circuit court shall have jurisdiction in all matters civil and criminal in this state not vested by this constitution in some other court, and such appellate jurisdiction as prescribed by law." These two sections highlight the command in Article 3, Section 24 of the Mississippi Constitution that the courts shall be open to and a remedy provided for all who have been injured.

12

¶33.    Again, the Mississippi Constitution grants chancery courts jurisdiction over various matters, including "all matters in equity." Miss. Const. art. 6, § 159. This provision is codified in Miss. Code Ann. § 9-5-81 (Rev 2002). Citing a "long line" of this Court's early twentieth century jurisprudence,[9] however, Mauldin urges that chancery court jurisdiction in redistricting matters is forbidden. While this "long line" of cases cannot be ignored, it must be viewed in continuity with the longer line of cases that succeeds it. *See, e.g., City of Grenada v. Harrelson*, 725 So. 2d 770 (Miss. 1998); *Adams County Election Commission v. Sanders*, 586 So. 2d 829 (Miss. 1991); *Carter v. Luke* 399 So. 2d 1356 (Miss 1981); *Lovorn v. Hathorn*, 365 So. 2d 947 (Miss. 1978). This latter line of precedent is in step with the United States Supreme Court's landmark ruling in *Baker v. Carr*, 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962), and its more contemporary rulings in *Growe v. Emison*, 507 U.S. 25, 113 S. Ct. 1075, 122 L. Ed. 2d 388 (1993), and *Scott v. Germano,* 381 U.S. 407, 85 S. Ct. 1525, 14 L. Ed. 2d 477 (1965) (per curiam). Our later cases indicate that when the Legislature fails to exercise its redistricting authority, the courts of this state have full jurisdiction to redistrict. This is especially true since the Legislature's failure deprives Mississippi voters of their constitutional voting rights, especially in this state, in which race-conscious districting has been required. *See Jordan v. Winter*, 604 F. Supp. 807 (N.D.

---

[9]*See Howard v. Sheldon*, 151 Miss. 284, 294, 117 So. 839 (1928), a **1928** case which held that courts cannot interfere with or regulate holding of primary elections or conventions by political parties; *Barnes v. McLeod,* 165 Miss. 437, 140 So. 740 (1932), a **1932** case which held that the chancery court does not have jurisdiction to enjoin county election commissioners from placing a Democratic nominee for county office on official ballots for general election due to fraud in primary election; *Brumfield v. Brock*, 169 Miss. 784, 142 So. 745 (1932), a **1932** case which held that chancery court cannot enjoin primary and general elections for congressmen on the  ground the then current redistricting act was void, where only possible expense would be to slightly lengthen ballot; *Barnes v. Barnett,* 241 Miss. 206, 129 So. 2d 638 (1961), a **1961** case which held that apportionment and reapportionment of the state Legislature and of congressional districts is a political question and not a judicial one, and that the remedy for unfairness in districting and apportioning representation is at the ballot box and not by judicial decree.

Miss. 1984) (three-judge court), *aff'd mem. sub nom.* **Miss. Republican Executive Comm. v. Brooks**, 469 U.S 1002, 105 S. Ct. 416, 83 L. Ed. 2d 343 (1984) (requiring that a majority African-American voting-age population congressional district be created in Mississippi).

¶34.    The earlier line of cases, including **Barnes v. McLeod**, 165 Miss. 437, 140 So. 740 (1932), and **Brumfield v. Brock**, 169 Miss. 784, 142 So. 745 (1932), which are the ultimate authority upon which Mauldin rests to deny jurisdiction, echo an era in which election matters were considered nonjusticiable,[10] political questions outside the judiciary's scope -- due to separation of powers principles.  Indeed, reapportionment "jurisprudence" did not exist at that time.  The judicial disposition on both the state and federal level at the time regarded reapportionment matters as a "political thicket," in which the judiciary was *not* to interfere regardless of the constitutional problems stirring therein.  **Colegrove v. Green**, 328 U.S. 549, 556, 66 S. Ct. 1198, 90 L. Ed. 1432 (1946).

¶35.    In **Baker v. Carr**, 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962),  however, the United States Supreme Court mandated that, in light of this nation's insidious civil-rights record, such a disposition was no longer legitimate.[11]  Clearly, after **Baker**, questions involving redistricting are no longer exclusively "political." Specifically, **Baker**  held that courts have jurisdiction to decide apportionment questions raised in litigation, and their jurisdiction is not defeated by labeling the issue as one involving a "political question."

---

[10]"Nonjusticiability" means inappropriateness of subject for judicial consideration, and the nonjusticiability of a political question is primarily a function of separation of powers.

[11]In **Baker,** a three-judge federal district court held that it lacked subject matter jurisdiction and that no justiciable claim had been stated in an action brought to require the reapportionment of the Tennessee Legislature, which had failed to redistrict since 1901.  The Supreme Court reversed the district court, holding that the voter-plaintiffs had indeed stated a cognizable cause of action based on the equal protection clause. The case was remanded to be heard and decided.

Mississippi's post-**Baker** line of decisions, which the majority and Mauldin do not meaningfully consider, reflect this change.

¶36.    Appellants contend that this Court affirmed in *Glass v. Hancock Co. Election Comm'n,* 250 Miss. 40, 156 So. 2d 825 (1963), decided one year after **Baker**, that chancery courts of this state do not retain jurisdiction over political cases.  Mauldin also contends that in *Glass*, this Court, while relying on our 1932 ruling in **Barnes**, rejected the contention that **Baker v. Carr** required a different view of the chancery court jurisdiction.  Mauldin misreads this Court's analysis and holding in *Glass*.

¶37.    The issue in *Glass* was whether injunction would lie to prevent the county election commission from conducting elections before the county was redistricted following population changes. The very peculiar situation in *Glass* was the federal government's land acquisition of a portion of the county's land for a NASA experiment site, which was to result in a population exodus in that locality.  The Board of Supervisors, therefore, responsible for endeavoring redistricting, entered an order to redistrict with the chancery court, such redistricting,  however, being contingent upon the settlement of the dislocated population.  Further, the applicable redistricting statute instructed that "'the board, whenever a majority of the qualified voters of the county shall have voted to change or alter the existing districts to those set forth and described in the petition, shall at its first meeting thereafter establish said proposed districts by order of its minutes and *in default thereof may command to do so by writ of mandamus"* **Id**. at 829 (citing the then-applicable Section 2870 of the Mississippi Code) (emphasis added).  At the time plaintiffs sought to enjoin the election, the Board *had not had a chance* to default.  Accordingly, *Glass* held that pursuant to (1) Section 2708 and (2) the fact that the Board could not redistrict due to the dislocated

15

population, and (3) the fact that the plaintiffs had not sought mandamus, injunction was improper – plaintiffs had not stated a claim upon which relief could be granted.

¶38.    In *Glass* this Court did not hold that the chancery court did not, nor would not have jurisdiction had other remedies first been exhausted. Indeed, it held that the proper remedy in that case was use of the writ of mandamus, pursuant to the applicable statute. The implication was that were it not, injunction would lie thus providing the chancery court with jurisdiction over the cause. *Id*. at 830.

¶39.    In *Glass* this Court analyzed *Baker v. Carr* and reasoned it inapplicable for the sole reason that, as distinguishable from the *Glass*-plaintiffs, the *Baker*-plaintiffs' voting rights had been violated *before* they sought redress in the court. *Id.* at 832. In other words, plaintiffs had alleged a cognizable claim. *Glass* quoted at length from that portion of *Baker* most applicable to its facts – Justice Douglas's instructive footnote 5 in his concurring opinion:

> The District Court need not undertake a complete reapportionment. It might possibly achieve the goal of substantial equality merely by directing respondent to eliminate the egregious injustices. Or its conclusion that reapportionment should be made may in itself stimulate legislative action. That was the result in *Asbury Park Press v. Woolley*, 33 N.J. 1, 161 A.2d 705, where the state court ruled it had jurisdiction:
>
>> If by reason of passage of time and changing conditions the reapportionment statute no longer serves its original purpose of securing to the voter the full constitutional value of his franchise, and the legislative branch *fails to take appropriate restorative action, the doors of the courts must be open to him.* The lawmaking body cannot by inaction alter the constitutional system under which it has its own existence. 33 N.J. at 14, 161 A.2d at 711. The court withheld its decision on the merits in order that the legislature might have an opportunity to consider adoption of a reapportionment act. For the sequel see Application of Lamb, 67 N.J. Super. 39, 46-47, 169 A.2d 822, 825-826.

16

Reapportionment was also the result in ***Magraw v. Donovan***, D.C., 159 F. Supp. 901, where a federal three-judge District Court took jurisdiction, saying, D.C., 163 F. Supp. 184, 187:

> Here it is the unmistakable duty of the State Legislature to reapportion itself periodically in accordance with recent population changes. . . . Early in January 1959 the 61st Session of the Minnesota Legislature will convene, all of the members of which will be newly elected on November 4th of this year. The facts which have been presented to us will be available to them. It is not to be presumed that the Legislature will refuse to take such action as is necessary to comply with its duty under the State Constitution. *We defer decision on all the issues presented (including that of the power of this Court to grant relief), in order to afford the Legislature full opportunity to "heed the constitutional mandate to redistrict."*
>
> *See* D.C., 177 F. Supp. 803, where the case was dismissed as moot, *the State Legislature having acted*.

156 So. 2d at 831-32 (quoting ***Baker v. Carr***, 369 U.S. at 250 n.5 (Douglas, J., concurring)) (emphasis added). We conclude that, contrary to Mauldin's contention, a more thorough reading of this Court's holding and analysis in ***Glass*** affirms that the chancery courts of this state indeed have jurisdiction to ensure redistricting where (1) relief in equity is available and proper (2) the Legislature has failed in its duty to redistrict, and (3) time to redistrict is running out.

¶40. Likewise, in ***Lovorn v. Hathorn***, 365 So. 2d 947 (Miss. 1978), this Court reversed and *remanded to* the chancery court a matter involving the proper means of electing state officials and never indicated that the chancery court was without jurisdiction. And in ***Carter v. Luke***, 399 So. 2d 1356 (Miss. 1981), this Court addressed chancery court rulings concerning a school board trustee's election and never suggested a lack of jurisdiction. In fact, this Court cited the "detailed decree of the Chancellor . . . outlin[ing] the election procedure," and stated "[w]e think the lower court acted properly and within the

17

applicable statutes and law in entering [that] final decree. . . . *Id*. at 1358. These cases were consolidated

for United States Supreme Court review, whereupon the Court held that the Mississippi state courts had

the power to decide whether a proposed change in election procedure requires preclearance under § 5 of

the Voting Rights Act. *Hathorn v. Lovorn*, 457 U.S. 255, 268, 102 S. Ct. 2421, 72 L. Ed. 2d 824

(1982). These cases clearly involve election law, and thus political matters, although they were never

reversed for lack of jurisdiction; each was adjudicated in the chancery court.

¶41.     Further, in *Adams County Election Commission v. Sanders,* 586 So. 2d 829, 380 (Miss.

1991), this Court held that the chancery courts are not prohibited from hearing cases involving electoral

matters. There, the chancery court enjoined pending county elections and set a new election schedule due

to federal law violations. This Court held that

> state courts have concurrent jurisdiction with the federal courts to decide
> whether § 5 of the Voting Rights Act applies to contemplated changes in
> election procedures. . . . We recognize that a state court *clearly has*
> *jurisdiction* to decide questions of violations of the one person, one vote
> standard under the 14th Amendment . . . as well as under Miss. Const.
> Art. 3, § 14.

586 So. 2d at 380 (emphasis added). This case implies that where there is a question regarding the one-

person, one-vote requirement, equity courts have jurisdiction.

¶42.     As recently as 1994, however, this Court held that the "chancery courts in this state do not have

the jurisdiction *to enjoin elections* or to otherwise *interfere* with political and electoral matters which

are not within the traditional reach of equity jurisdiction." *In re McMillin,* 642 So.2d 1336 (Miss. 1994).

In fairly considering *McMillin* as dispositive, we are guided by two realizations.[12]

_____

[12]Immediately, I recognize that one must "interfere" with *something*; one cannot "interfere" with
*nothing*, which is what the Legislature handed the citizens of this State when it adjourned repeatedly
without a redistricting plan in the present case. Indeed, Branch  did not seek that the chancery court

18

¶43.    First, *McMillin*, as did Mauldin in the present case, and, as did the federal district court in its order in this case,  cited a line of precedent *predating* ***Baker v. Carr*** by, in some cases, nearly 35 years, for the proposition that the chancery is without jurisdiction over election matters.  ***Id***.  Indeed, ***McMillin*** cited as supporting authority the following cases: ***Howard v. Sheldon****,* 151 Miss. 284, 294, 117 So. 839, 839 (1928), a **1928** case which held that courts cannot interfere with or regulate holding of primary elections or conventions by political parties; ***Barnes v. McLeod****,* 165 Miss. 437, 140 So. 740 (1932), a **1932** case holding that the chancery court does not have jurisdiction to enjoin county election commissioners from placing a Democratic nominee for county office on official ballots for general election due to fraud in primary election; ***Brumfield v. Brock***, 169 Miss. 784, 142 So. 745 (1932), a **1932** case holding that chancery cannot enjoin primary and general elections for congressmen on the  ground the then current redistricting act was void, where the only possible expense would be to slightly lengthen ballot; and ***Barnes v. Barnett****,* 241 Miss. 206, 129 So. 2d 638 (1961), a **1961** case holding that apportionment and reapportionment of the state legislature and of congressional districts is a political question and not a judicial one, and that the remedy for unfairness in districting and apportioning representation is at the ballot box and not by judicial decree.  642 So.2d 1336.  ***McMillin*** also cited ***Todd v. Smith***, 331 So. 2d 920 (Miss. 1976), which held that since the proper remedy of petitioning the county executive committee within 20 days after the election had not been sought, the chancery court had no jurisdiction to grant injunctive relief.  Finally, the Court cited  ***Goodman v. Rhodes****,* 375 So. 2d 991, 993 (Miss. 1979), which cited

interfere with any legislative plan or legislative enactment. Also, Branch did not seek to *enjoin* an election. Instead, they seek equitable relief to ensure an election under a lawful plan, pursuant to the election schedule mandated by state law.

*Barnes* (**1932**) and *Brumfield* (**1932**) as its *only* authority to hold that chancery courts do not have jurisdiction to determine the candidates whose names should appear or not appear on a ballot. *Id.*

¶44.    Thus the authorities upon which *McMillin* relies speak of a time in which political matters were considered nonjusticiable and/or indicate that injunctive relief was premature. In large measure, therefore, the case was erroneously reasoned.

¶45.    The second realization is that this Court has since said that *McMillin* is not a bar to state court jurisdiction in election cases involving one-person one-vote issues. *City of Grenada v. Harrelson*, 725 So. 2d 770 (Miss. 1998). In *City of Grenada ,* the circuit court declined to enjoin an election based on its reading of *In re McMillin.  Id*. at 772.  We, however, reversed, holding that the circuit court had jurisdiction to enjoin the election since the United States Attorney General had returned a § 5 preclearance letter to the proposed ward-line change submitted by the city council.  The new wards were not properly adopted according to *state* law and allegedly violated the one-person, one-vote requirement.

¶46.    Considering the foregoing, we reasoned that if the Legislature fails to redistrict, as required under both state and federal law, the constitutional voting rights of Mississippi voters are implicated.  These implications clearly can occur in cases involving the *absence* of redistricting when election time is nearing, but the Legislature has nevertheless failed to redistrict.  Under our case law after *Baker v. Carr,* our equity courts have jurisdiction.

¶47.    If there is any remaining doubt as to the propriety of our equity courts taking over when the Legislature fails to enact a constitutional redistricting plan, *Branch v. Smith* and  *Growe v. Emison* eliminate it.  When the Legislature does not act, citizens may sue and, then, it is the judiciary's role to determine the appropriate redistricting plan. *Growe ,* 507 U.S. at 33-34, 113 S. Ct. 1075; *Scott v.*

*Germano,* 381 U.S. 407, 409, 85 S. Ct. 1525, 14 L. Ed. 2d 477 (1965) (per curiam); *Maryland Comm. v. Tawes,* 377 U.S. 656, 676, 84 S. Ct. 1429, 12 L. Ed.2d 595 (1964). In any case, the Court stated that "[t]he power of the judiciary of a State to require valid reapportionment or to require a valid redistricting plan has not only been recognized by the Court, but . . . has been specifically encouraged." *Id.* (quoting *Scott v. Germano,* 381 U.S. at 409). As the Court explained, "In the reapportionment context, the Court has required federal judges to defer to consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Growe v. Emison,* 507 U.S. at 33 (emphasis in original). Pursuant to *Growe,* therefore, although the Legislature has initial responsibility to act in redistricting matters, that responsibility can shift to state judiciary if Legislature fails to act, and to the federal judiciary *only* once state legislature or state judiciary have demonstrated inability or disinclination to act. *See, e.g., Brooks v. Hobbie,* 631 So. 2d 883 (Ala. 1993).

¶48.    It is when the law may not be clear as to jurisdiction that *Branch v. Smith* speaks. The U.S. Supreme Court affirmed the district court's injunction strictly on the basis that our assertion of chancery court jurisdiction had not been precleared. However, the Court vacated the alternative constitutional ground that such assertion of jurisdiction violated Art. I, § 4 as a basis for the injunction. In vacating that ground, the Court reiterated that the constitutional analysis was not "binding upon state and federal officials should Mississippi seek in the future to administer a redistricting plan adopted by the Chancery Court." 123 S. Ct. at 1437. Seeking administration of the chancery court plan is exactly what the Mississippi Attorney General has expressed as his intent.

¶49.    Mauldin filed supplemental briefs to this Court following the Supreme Court decision which continue to press the argument that in the event of a legislative default, our courts are to abandon the field

21

entirely to the federal courts. Not only is our case law unsupportive of this position, Mississippi would be the only state having addressed this issue to say, as a matter of law, that its courts will undertake no such responsibility. I am unwilling to take this position.

¶50.    Recently, the Oklahoma Supreme Court flatly rejected the notion that its lower courts did not have jurisdiction in redistricting cases in the event of a legislative default; and in doing so it flatly rejected the federal district court's constitutional ruling here. *Alexander v. Taylor*, 51 P.3d 1204 (Okla. 2002).

¶51.    However, even given the majority's erroneous conclusion the chancery courts are without jurisdiction, our residents still have an available Mississippi judicial forum. As stated in our Constitution and case law, the circuit courts would retain jurisdiction. *See* Miss. Const., Art. 6, §156 ("[t]he circuit court shall have jurisdiction in all matters civil and criminal in this state not vested by our constitution in some other court"); *Farrar v. State*, 191 Miss. 1, 2 So. 2d 146, 147 (1941) ("[The Mississippi Constitution of 1890] was intended to parcel out to the respective courts created or authorized therein the entire judicial jurisdiction of the State, and that none was left undisposed of."). Therefore, under the Mississippi Constitution there is a state court that has jurisdiction over this matter.

¶52.    Furthermore, bringing an action in the wrong state court, is of no consequence in this matter. We have held that, in interpreting Section 147 to Article 6 of the Mississippi Constitution of 1890, reversal is not warranted merely for such a jurisdictional discrepancy. *See  Southern Leisure Homes, Inc. v. Hardin*, 742 So. 2d 1088, 1091 (Miss. 1999).

¶53.    The protection of voting rights is the purpose of redistricting, and the courts are the guardians of those rights. Therefore, it is entirely appropriate that our courts are open to ensure them. Accordingly, the majority errs in holding otherwise.

## II. AT-LARGE ELECTIONS

¶54. Branch asserts that Miss. Code. Ann. § 23-15-1033 mandates that representatives be chosen by district, not at-large. This section provides:

> Representatives in the Congress of the United States shall be chosen by *districts* on the first Tuesday after the first Monday of November in the year 1986, and every two (2) years thereafter; and the laws regulating general elections shall in all respects apply to and govern elections for representatives in Congress; and the Governor shall issue a commission to the person elected in each of said districts.

Miss. Code Ann. § 23-15-1033 (Rev. 2001). (emphasis added). Mauldin and the majority assert that, an at-large election should have been enforced in the absence of redistricting pursuant to Miss. Code. Ann. § 23-15-1039, which provides:

> Should an election of representatives in Congress occur after the number of representatives to which the state is entitled shall be changed, in consequence of a new apportionment being made by Congress, and before the districts shall have been changed to conform to the new apportionment, representatives shall be chosen as follows: In case the number of representatives to which the state is entitled be increased, then one (1) member shall be chosen in each district as organized, and the additional member or members shall be chosen by the electors of the state at large; and if the number of representatives shall be diminished, then the whole number shall be chosen by the electors of the state at large.

Miss. Code Ann. 23-15-1039 (Rev. 2001).

¶55. Specifically, Mauldin raised three separate issues regarding the applicability of Section 23-15-1039: (1) any jurisdiction in the chancery court was limited to enforcement of an at-large election pursuant to the federal at-large statute concomitant with § 23-15-1039; (2) Branch fails to raise a claim since, in Mauldin's view, an at-large election was the proper remedy but was not sought; and (3) the chancery court's refusal to order an at-large election constituted a change in election law requiring § 5 preclearance. Branch

likewise asserted that had the chancery court ordered an at-large election, such order would constitute a change in election law requiring preclearance since Miss. Code Ann.§ 23-15-1033 directs that members are to be chosen by district. The single question underscoring each of these arguments is: When, if ever, is Miss. Code Ann. § 23-15-1039 controlling? *Smith v. Branch* settles this question. *See Smith v. Branch,* 123 S. Ct. 1429, 1442 (2003). Under the circumstances preceding state and federal court action in this case, an at-large election was not required. *Id*. This conclusion is based upon a reading of our statutes and the Supreme Court's recent interpretation of 2 U.S.C. §§ 2(c) and §§ 2(a)(c)(2) and (5).

¶56.    Section 2a(c) provides that "Until a State is redistricted in the manner provided by the law thereof after any apportionment, . . . if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large." 2 U.S.C § 2a(c). 2 U.S.C. § 2c, however, provides:

> In each State entitled in the Ninety-first Congress or in any subsequent Congress thereafter to more than one Representative under an apportionment made pursuant to the provisions of section 2a(a) of this title, there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so established, no district to elect more than one Representative (except that a State which is entitled to more than one Representative and which has in all previous elections elected its Representatives at Large may elect its Representatives at Large to the Ninety-first Congress).

2 U.S.C. § 2c. The Supreme Court interpreted these provisions in *Branch v. Smith* in deciding whether the federal court in the present case properly enjoined our chancery court's redistricting plan. 123 S. Ct. at 1441-43. The Court held:

> § 2a(c) is inapplicable *unless* the state legislature, and state and federal courts, have all failed to redistrict pursuant to § 2c. How long is a court

24

to await that redistricting before determining that § 2a(c) governs? Until, we think, the election is so immanent that no entity competent to complete redistricting pursuant to state law (including the mandate of § 2c) *is able to do so without disrupting the election process. Only then may* § 2a(c)'s stop gap provisions be invoked. Thus, §2(a)(c) continues to function as it always has, as a last-resort remedy to be applied when, on the eve of a congressional election, no constitutional redistricting plan exists and there is no time for either the State's legislature or the courts to develop one. ***Carstens v. Lamm****, 543 F. Supp. at 77-78. 123 S. Ct. at 1442. I agree with the U.S. Supreme Court's statement that our at-large statute "was designed to track U.S.C. §§ 2(a)(c)(2) and (5) and is operative when those sections would be." 123 S. Ct. at 1443. That is to say, (1) the phrase "and before the districts shall have been changed to conform to the new apportionment" envisions both legislatively and judicially prescribed change, and (2) the statute does not come into play as long as it remains feasible for a state or federal court to complete redistricting.

***Id.***

¶57.   As to Mauldin's argument that Branch failed to state a claim, not only is the above analysis dispositive, but to add, Miss. Code Ann. § 5-3-123 required the SJCRC to prepare a new redistricting plan by December 3, 2001. Miss. Code Ann. § 5-3-129 required its submission to the Governor and Legislature. These statutes were cited in the amended complaint below to demonstrate that the Legislature was about to default. Section 5-3-123 reads as follows:

> The members of the committee shall draw a plan to redistrict, according to constitutional standards, the United States congressional districts for the state of Mississippi no later than (30) days preceding the convening of the next regular session of the legislature after the results of the 1980 decennial census are published and every ten (10) years thereafter.
>
> Provided, however, the committee shall not be required to present a plan to the governor and to the legislature prior to four (4) months after the publication of census data.

Miss. Code Ann. § 5-3-123 (2000). Section 5-3-129 reads as follows: "Upon completion of a redistricting plan, the committee shall present its plan to the governor and to the Mississippi legislature." Miss. Code Ann. § 5-3-129 (2000). The SJCRC could not come up with a redistricting plan and was fast in route to miss both the March 1 qualifying deadline set out in Miss. Code. Ann. § 23-15-299, and the § 5 preclearance deadline. As a result, Branch filed suit for injunctive relief. Specifically, in paragraph five of their amended complaint, they alleged:

> Unless the legislature adopts a plan in time for it to be implemented in advance of the March 1 qualifying deadline, the interests of the plaintiffs and all Mississippi voters in enforcement of *Mississippi's election laws* will be compromised, and their *rights under Mississippi law to participate in a congressional election process conducted in a timely manner will be violated*.

(Emphasis added). In paragraph seven Branch then asked the court to "ensure enforcement of the laws" and to "adopt and implement a congressional redistricting plan so that the plan can be in place in sufficient time for the candidate qualification deadlines and election process to go forward according to the schedule established by Mississippi law."

¶58. In response, the Mauldin Intervenors filed a motion to dismiss claiming that Mississippi law requires at-large elections in the event of a legislative redistricting default, and therefore deprives the chancery court of jurisdiction to adopt a redistricting plan.

¶59. I not only observe, as did the chancellor, the glaring conflict between the applicable statutes, and especially §§ 23-15-1033 and 23-15-1039, I also observe that § 23-15-1033's requirement to choose congresspersons by district complies with the well-settled one person-one vote rule now the preeminent principle of *state* and federal election law. This is enough to justify the chancery court's continuing effort to adopt and implement a constitutional plan, and enough for Branch to have raised a justiciable claim

26

below. Given the inconsistencies of the applicable statutes, the chancellor in asserting her authority relied on the clearer guidance of *Growe v. Emison,* 507 U.S. at 33, in which the U.S. Supreme Court stated that "[t]he power of the judiciary of a State to require valid reapportionment or to require a valid redistricting plan has not only been recognized by this Court, but . . . has been specifically encouraged." *Id*. (quoting *Scott v. Germano,* 381 U.S. at 409). In fact, in *Growe,* the Court held that the federal court must stay its hand until the state court has issued a redistricting plan in the absence of the legislature's timely agreement upon reapportionment. *Id*. Moreover, in December of 2001, given the exigencies faced, we ordered the chancellor to proceed. *In re Mauldin*.

¶60. The authorities available to the chancellor did not negatively answer the question of jurisdiction, nor did they command that she order an at-large election. Moreover, Branch sought to ensure the enforcement of Mississippi law in general, and this was sufficient to state a justiciable claim and thus open the court house door to the present cause, considering Branch's fundamental voting rights. Indeed, much more was before the bar than the at-large statute, which, incidentally, has never been implemented. An at-large election was not required. Nor was the chancery court's jurisdiction limited to ordering an at-large election since Branch had a justiciable claim based on the stakes of their voting rights.

¶61. Because the chancery court had jurisdiction in this case and did not err in adopting its congressional redistricting plan where the legislature failed to discharge its redistricting duty, the chancery court's judgment should be affirmed. Therefore, I dissent.

27