# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-SA-02468-SCT

*SINGING RIVER HOSPITAL SYSTEM*
*d/b/a OCEAN SPRINGS HOSPITAL*
*AND MISSISSIPPI STATE*
*DEPARTMENT OF HEALTH*

*v.*

*BILOXI REGIONAL MEDICAL CENTER,*
*GARDEN PARK MEDICAL CENTER*
*AND GULF COAST MEDICAL CENTER*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/2004 |
| TRIAL JUDGE: | HON. WILLIAM HALE SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | BARRY K. COCKRELL |
| | SARAH E. BERRY |
| | JENNIFER C. EVANS |
| ATTORNEYS FOR APPELLEES: | ANDY LOWRY |
| | THOMAS L. KIRKLAND, JR. |
| | JULIE A. BOWMAN |
| | BETTY TOON COLLINS |
| | DOUGLAS E. LEVANWAY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/30/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The Singing River Hospital System filed an application for a certificate of need to (1)

relocate sixty beds from the Singing River Hospital in Pascagoula to the Ocean Springs

Hospital in Ocean Springs; (2) renovate and expand the first floor of the Ocean Springs Hospital; and (3) construct a new three-floor tower on the Ocean Springs Hospital campus to house the sixty relocated beds. After Singing River's CON application was filed, other area hospitals[1] filed formal protests with the Health Department. After a hearing, the CON was issued. The protesting hospitals filed a petition for judicial review. The Chancery Court of Hinds County, Mississippi, revoked the issuance of the CON, and from this decision, Singing River appeals.

¶2.     Both the Singing River and the Ocean Springs Hospitals are under the purview of the Singing River Hospital System and are located in Jackson County, Mississippi. And, even though the State Department of Health has issued one license to operate both hospitals to the Singing River Hospital System, each of the hospitals has a "separate physical license," allowing the Singing River Hospital to have 404 licensed beds and the Ocean Springs Hospital to have 136 licensed beds.

¶3.     The Mississippi State Department of Health has the authority to grant permission to all hospitals in the state for, inter alia, building a new facility, expanding an existing facility, or relocating services to another facility. *See* Miss. Code Ann. §§ 41-7-171 - 41-7-209 (Rev. 2005). The Health Department's formal grant of permission is termed the issuance of a certificate of need ("CON"). The beds which Singing River proposes to relocate are already-licensed but unused beds.

---

[1]Appellees Biloxi Regional Medical Center, Garden Park Medical Center and Gulf Coast Medical Center.

DISCUSSION

¶4. The standard of review for a final order of the State Health Department is controlled by Miss. Code Ann. 41-7-201(2)(f) (Rev. 2001), which provides in part that a reviewing court may vacate the final order if it finds that the final order "is not supported by substantial evidence, [or] is contrary to the manifest weight of the evidence." *St. Dominic-Jackson Memorial Hospital v. Miss. State Dep't of Health*, 728 So. 2d 81, 83 (Miss. 1999).

¶5. The *State Health Plan*'s need criteria for existing hospitals desiring to expand, renovate or build is entitled "Certificate of Need Criteria and Standards for Construction, Renovation, Expansion, Capital Improvements, Replacement of Health Care Facilities, and Addition of Hospital Beds" ("Hospital Construction"). Other need criteria exist for the establishment of a new hospital or for the purchase of a new "health service"[2] such as MRI imaging equipment. Each of the different need criteria require different standards of proof. The need criteria for Hospital Construction has two subparts: one for projects which do not involve additional beds (Criterion 1a) and one for projects which do involve additional beds (Criterion 1b).[3] Neither of the two criteria use the term "relocate." The main dispute

---

[2]"Health service," as defined in the *Certificate of Need Review Manual*, is a diagnostic, treatment or rehabilitative service.

[3]The *State Health Plan* provides as follows:

1.   **Need Criterion:**

     a.   **Projects which do not involve the addition of any acute care beds:** The applicant shall document the need for the proposed project. Documentation may consist of, but is not limited to, citing of licensure or regulatory code deficiencies, institutional long-term plans (duly adopted by the governing board),

between the parties on appeal is whether "relocated" beds are "additional" beds as contemplated under the Need Criteria for Hospital Construction.

¶6. The distinction between the application of Criterion 1a or Criterion 1b is crucial because Criterion 1b requires a more stringent standard of proof than Criterion 1a. If a proposal involves additional beds, the petitioning hospital must show that it has "maintained an occupancy rate of at least 70 percent for the most recent two (2) years." There is no such requirement under Criterion 1a. In this case, the Health Department applied Criterion 1a, finding that Singing River's application did not involve additional beds. The chancellor reversed the issuance of the CON, finding that the application did indeed involve additional beds and that the Health Department should have applied Criterion 1b.

¶7. Therefore, the issue before the Court is whether the Singing River beds proposed to be relocated to Ocean Springs are "additional" beds. Singing River and Ocean Springs argue that relocated beds cannot be called additional beds. This argument is based on their (and

---

recommendations made by consultant firms, and deficiencies cited by accreditation agencies (JCAHO, CAP, etc.). In addition, for projects which involve construction, renovation, or expansion of emergency department facilities, the applicant shall include a statement indicating whether the hospital will participate in the statewide trauma system and describe the level of participation, if any.

b. **Projects which involve the addition of beds:** The applicant shall document the need for the proposed project. In addition to the documentation required as stated in Need Criterion (1)(a) the applicant shall document that the facility in question has maintained an occupancy rate of at least 70 percent for the most recent two (2) years.

4

the Health Department's) interpretation of "relocated beds" as previously-licensed beds and of "additional" beds as newly-licensed beds.

¶8.     However, we must consider the the substance of the proposal rather than its label. *St. Dominic-Jackson Memorial Hospital v. Miss. State Dep't of Health*, 728 So. 2d 81, 89 (Miss. 1999).  To make this determination, we look at the following factors:

1.     The "relocation" of unused, licensed beds from Singing River to Ocean Springs will result in the *addition* of sixty beds to Ocean Springs.  Ocean Springs' bed complement will increase from 136 beds to 196 beds.  There will be an additional sixty beds at Ocean Springs, whether those beds are "relocated" beds or newly-licensed beds.

2.     Need Criteria 1a and 1b do not contain the words "relocate," "relocated," or "relocation."  The criteria merely speak to whether a bed is "additional."

3.     Section 41-7-191 of the Miss. Code Ann. (Rev. 2005) delineates the "activities" for which a CON is needed.  When speaking of a "relocation," 41-7-191 refers to the relocation "of a health care facility or portion thereof," or of the "relocation of one or more health services[4] from one physical facility or site to another physical facility or site." Miss. Code Ann. § 41-7-191(1)(b) & (e).[5]  Singing River's CON application does not

---

[4]A "health service," as defined in the *Certificate of Need Review Manual*, is a diagnostic, treatment or rehabilitative service.

[5]Section § 41-7-191 provides in part as follows:

(1)     No person shall engage in any of the following activities without obtaining the required certificate of need:

\* \* \*

5

propose the relocation of a health care facility or of one or more health services. These two subparts are the only provisions which speak of a relocation.

4.    Arguably, the relocation of some of a health care facility's beds could be considered to be the relocation of a "portion" of that health care facility. But 41-7-191(1)(c) specifically speaks to changes in a health care facility's number or type of beds. A CON must be issued for "any change in the existing bed complement of any health care facility through the addition or conversion of any beds or the alteration, modernizing or refurbishing of any unit or department in which the beds may be located. . . ." Miss. Code Ann. § 41-7-191(1)(c). Under the statute, a "relocation" of a bed is not contemplated to be "[a]ny change in the existing bed complement." Instead, changes in the existing bed complement are made either by adding new beds or by the "conversion" of beds.

5.    The *State Health Plan* does not define "conversion" but the *American Heritage Dictionary of the English Language* (1981 ed.) defines "convert" as "to change into another form, substance, state or product; transform; transmute." A reasonable interpretation[6] of subsection (c)'s use of the word "conversion" would therefore be the change of an existing

_____

        (b)    The relocation of a health care facility or portion thereof, . . .

                             * * *

        (e)    The relocation of one or more health services from one physical
               facility or site to another physical facility or site . . . .

   [6]"Our duty is to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case." ***Pope v. Brock***, 912 So. 2d 935, 937 (Miss. 2005).

bed into another kind of bed, *e.g.*, the conversion of a bed designated for pediatric care to a bed designated for cardiac care.

6.      Subsection (c) does not use the words "relocate," relocated" or "relocation." Yet other subsections of 41-7-191 do.  We can only conclude that, if the Legislature intended subsection (c) to cover "relocated" beds, it would have stated so in the statute.[7]

7.      The *Certificate of Need Review Manual*, which is published by the Department of Health, uses the word "relocation" only when referring to "the relocation of a facility or service."[8]  *See Certificate of Need Review Manual*, Chapter 8 - Criteria Used by State

_____

[7]"The duty of this Court is to interpret the statutes as written. It is not the duty of this Court to add language where we see fit. '[O]ur primary objective when construing statutes is to adopt that interpretation which will meet the true meaning of the Legislature.'"  *See* **Mauldin v. Branch**, 866 So. 2d 429, 435 (Miss. 2003) (quoting **Stockstill v. State**, 854 So. 2d 1017, 1022-23 (Miss. 2003)).

[8]The *Certificate of Need Review Manual* provides in part as follows:

> 5.      **Need for the Project:** One or more of the following items may be considered in determining whether a need for the project exists:
>
> * * *
>
> b.      In the case of the relocation *of a facility or service*, the need that the population presently served has for the service, the extent to which that need will be met adequately by the proposed relocation or by alternative arrangements, and the effect of the relocation of the service on the ability of low income persons, racial and ethnic minorities, women, handicapped persons and other underserved groups, and the elderly, to obtain needed health care.

Chapter 8, p. 51 (emphasis added).

Department of Health for Evaluation of Projects, ¶ 5, "Need for the Project," p. 51. A proposal for the relocation of beds is not discussed under "Need for the Project."

¶9. Therefore, we find that the designation or label of a bed as "relocated" or as "newly-licensed" is irrelevant when determining, under the Need Criteria for Hospital Construction, whether a bed is additional or not. The relocation of unused but already-licensed beds from one health care facility to another is not contemplated under the relevant statute. The statute only uses the word "relocation" when speaking of the relocation of an entire or a portion of a health care facility, or of health services, not of beds. The Need Criteria for Hospital Construction do not contain the words "relocate, relocated or relocation." The *Certificate of Need Review Manual* does not use the words "relocate, relocated or relocation" when speaking of beds. Finally, and most importantly, the proposal, in actuality, is for Ocean Springs to *add* sixty beds.

¶10. We find that the State Health Department's issuance of a Certificate of Need to Singing River Hospital System is not supported by substantial evidence because the proposal in Singing River's CON application results in the addition of sixty beds to Ocean Springs Hospital. Because sixty beds would be *added*, the State Health Department should have used Criterion 1b (pertaining to proposals for the addition of beds) under the Need Criteria for Hospital Construction instead of Criterion 1a (pertaining to proposals which do not include the addition of beds). The Singing River Hospital System has confessed it cannot meet the standard included in Criterion 1b; therefore, the chancellor was correct in revoking the CON issued to them.

**CONCLUSION**

¶11.    We affirm the chancellor's decision to revoke the Health Department's issuance of a certificate of need to the Singing River Hospital System for the relocation of beds from the Singing River Hospital to the Ocean Springs Hospital.

**¶12.    AFFIRMED.**

**SMITH, C.J., COBB, P.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**